[No. S094088. July 31, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ARLENE DENA SANDERS et al., Defendants and Appellants.

320

## COUNSEL

J. Peter Axelrod, under appointment by the Supreme Court, for Defendant and Appellant Arlene Dena Sanders.

Elizabeth M. Campbell, under appointment by the Supreme Court, for Defendant and Appellant Kenton Michael McDaniel.

Alan L. Schlosser; Kathy Kahn and John T. Philipsborn for American Civil Liberties Union of Northern California and California Attorneys for Criminal Justice as Amici Curiae on behalf of Defendants and Appellants.

Law Offices of the Alternate Defender, Jose R. Villarreal, Ronald A. Norman and Stephen Elrick for California Public Defenders Association and Alternate Defender Office as Amici Curiae on behalf of Defendants and Appellants.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Jo Graves, Assistant Attorney General, Louis M. Vasquez, Robert P. Whitlock, Leah Ann Alcazar, John G. McLean and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

Steve Cooley, District Attorney (Los Angeles), George M. Palmer, Head Deputy District Attorney, Brentford J. Ferreira and Phyllis C. Asayama, Deputy District Attorneys, for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**MORENO, J.**—In *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], we held that the warrantless search of a residence could not be justified as a parole search if the police did not know of the suspect's parole status when they conducted the search. In *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519], we declined to follow the reasoning of *Martinez* and instead upheld the warrantless search of the person of a juvenile who was on juvenile probation and subject to a search condition of which the police were unaware at the time of the search. In *People v. Robles* (2000) 23 Cal.4th 789, 800 [97 Cal.Rptr.2d 914, 3 P.3d 311], we held that the search of a residence could not be justified by the circumstance that the defendant's brother, who lived in the residence, was on probation and subject to a search condition of which the police were unaware at the time of the search. In the present case, police searched the residence of two persons, one of whom was on parole and subject to a search condition of which the police were unaware at the time of the search. For the reasons that follow, we conclude that evidence seized during the search must be suppressed as to both defendants.

## FACTS

Defendants Arlene Dena Sanders and Kenton Michael McDaniel were charged by information with possession for sale of cocaine base in violation of Health and Safety Code section 11351.5. The information further alleged that McDaniel had suffered a prior conviction of the same offense. Defendants moved to suppress evidence, and a hearing was conducted at which the following evidence was presented.

On April 6, 1999, Bakersfield Police Officers Glen Davis and Scott Thatcher responded to a report of a disturbance at an apartment building. They spoke to the building manager, who indicated that there was a fight going on in defendants' apartment. As they approached the apartment, Officer Davis heard a man and woman inside yelling at each other. Officer Thatcher knocked on the door. The yelling stopped and, a short time later, Sanders peeked out through some blinds. Officer Thatcher knocked again and ordered the occupants to open the door. After a short delay, Sanders opened the door. She had an abrasion on her face, and McDaniel was nearby, standing behind a couch. The officers entered the apartment. They saw McDaniel place something behind a couch cushion. Officer Thatcher caught a glimpse of something metal. Sanders demanded that the officers leave and began "tussling" with Officer Thatcher. McDaniel also demanded that the officers leave and moved toward Officer Thatcher, telling him to leave Sanders alone. The officers handcuffed both defendants.

Officer Davis then conducted a "protective sweep" of the apartment "to make sure there [was] no one else in the residence that could endanger [the officers'] safety." In one of the bedrooms, the closet door was open and Officer Davis saw a pair of work boots. One of the boots "had a bunch of plastic bags stuffed into it and it had little white chunks of cocaine base knotted into the corners." After making this discovery and completing the sweep of the apartment, Officer Davis contacted the police department and learned that McDaniel was on parole and "subject to search terms." Officer Davis requested assistance, including a police dog, and conducted a parole search of the apartment. He seized the baggies he previously had seen in the work boot, as well as other items. Officer Thatcher recovered a pair of scissors from between the couch cushions.

The prosecution introduced into evidence at the suppression motion a one-page document entitled "Notice and Conditions of Parole" that reflected that on May 23, 1998, McDaniel had been released on parole for three years on the condition, among others, that "You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer."[1]

The superior court denied the motion to suppress evidence. Sanders pled guilty to a reduced charge of possession of a controlled substance, in violation of Health and Safety Code section 11350, and was sentenced to a term of 16 months in prison. McDaniel pled guilty as charged to possession of cocaine base, in violation of Health and Safety Code section 11351.5. The alleged prior conviction was stricken and McDaniel was sentenced to a term of five years in prison.

Defendants appealed. They did not challenge the validity of the officer's entry into the apartment, but argued it was unlawful for the police to search the apartment after defendants were handcuffed. The Court of Appeal reversed the judgment, holding that the "protective sweep" of the apartment was unlawful under the rule announced in *Maryland v. Buie* (1990) 494 U.S. 325 [108 L.Ed.2d 276, 110 S.Ct. 1093], and was not justified as a parole search because the officers were unaware at the time of the search that McDaniel was on parole. We granted review to decide whether the search

---

[1] Shortly before oral argument, the Attorney General filed a request for judicial notice of copies of the complaint, the information, and the abstract of judgment in *People v. Kenton Michael McDaniel*, Superior Court of Kern County, No. SC69228A. Defendant Sanders objects on the ground that these documents were not before the trial court. We agree with defendant Sanders and deny the request for judicial notice. (*People v. Amador* (2000) 24 Cal.4th 387, 394 [100 Cal.Rptr.2d 617, 9 P.3d 993].)

was lawful because McDaniel was on parole, despite the fact that the officers were unaware of McDaniel's parole status when they conducted the search.[2]

## DISCUSSION

Exclusion of "relevant, but unlawfully obtained evidence" is permitted under article I, section 28, subdivision (d) of the California Constitution "only if exclusion is required by the United States Constitution." (*In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744].) "The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .' " (*United States v. Calandra* (1974) 414 U.S. 338, 347 [38 L.Ed.2d 561, 94 S.Ct. 613].) "[T]he 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.' [Citations.]" (*United States v. Janis* (1976) 428 U.S. 433, 446 [49 L.Ed.2d 1046, 96 S.Ct. 3021]; *Stone v. Powell* (1976) 428 U.S. 465, 479 [49 L.Ed.2d 1067, 96 S.Ct. 3037] [" '[T]he exclusion of illegally seized evidence is simply a prophylactic device intended generally to deter Fourth Amendment violations by law enforcement officers.' "].)

"The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim: '[T]he ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late.' [Citation.] Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures: 'The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' [Citations.] In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." (*United States v. Calandra, supra*, 414 U.S. 338, 347–348, fn. omitted; *United States v. Leon* (1984) 468 U.S. 897, 906 [82 L.Ed.2d 677, 104 S.Ct. 3405].)

" '[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " (*Payton v. New York* (1980) 445 U.S. 573, 585 [63 L.Ed.2d 639, 100 S.Ct. 1371, 1379–1380].) "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (*Silverman v. United States* (1961) 365 U.S. 505, 511 [5 L.Ed.2d 734, 81 S.Ct. 679].)

---

[2] We express no view regarding the Court of Appeal's ruling that the "protective sweep" of the apartment violated the rule announced in *Maryland v. Buie, supra*, 494 U.S. 325.

*Griffin v. Wisconsin* (1987) 483 U.S. 868 [97 L.Ed.2d 709, 107 S.Ct. 3164], upheld a warrantless search of the residence of a probationer pursuant to a state regulation permitting any probation officer "to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband— including any item that the probationer cannot possess under the probation conditions." (*Id.* at pp. 870–871.) The high court began its analysis by recognizing that "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' " (*Id.* at p. 873.) But the usual requirement "that a search be undertaken only pursuant to a warrant" was excused based upon the "special need" to supervise probationers. (*Ibid.*) The court also recognized that probationers and parolees "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [proba- tion] restrictions.' [Citation.]" (*Id.* at p. 874.) The court concluded: "Supervi- sion, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." (*Id.* at p. 875.) The court was quick to add, however, that the "permissible degree [of impingement upon privacy] is not unlimited." (*Ibid.*)

*United States v. Knights* (2001) 534 U.S. 112 [151 L.Ed.2d 497, 122 S.Ct. 587] held that a law enforcement officer investigating criminal conduct could search the residence of a probationer without a warrant pursuant to a probation search condition. The defendant in *Knights* was on probation that included a condition that he " '[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.' " (*Id.* at p. 114.) A sheriff's detective who knew of the search condition and suspected Knights had committed acts of vandalism and an act of arson, searched Knights's home without a warrant and found incriminating evidence.

The high court declined to decide "whether Knights' acceptance of the search condition constituted consent in the *Schneckloth* [*v. Bustamonte* (1973) 412 U.S. 218 [36 L.Ed.2d 854, 93 S.Ct. 2041]] sense of a complete waiver of his Fourth amendment rights" because the court concluded that the search "was reasonable under our general Fourth Amendment approach of 'examin- ing the totality of the circumstances,' [citation] with the probation search condition being a salient circumstance." (*United States v. Knights, supra,* 534 U.S. 112, 118.) The court observed that "[i]nherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' [Citations.]" (*Id.* at p. 119.) The court concluded that "[t]he probation condition thus significantly diminished Knights' reason- able expectation of privacy" (*id.* at pp. 119–120, fn. omitted), but the court did "not decide whether the probation condition so diminished, or completely

eliminated, Knights' reasonable expectation of privacy (or constituted consent . . .) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." (*Id.* at p. 120, fn. 6.)

With these principles in mind, we turn to an examination of California law.

In *In re Martinez, supra,* 1 Cal.3d 641, we addressed a situation similar to that of the present case, in which police conducted a warrantless search of a residence and later discovered that the suspect was on parole. Martinez was arrested in a car outside his home. Police then conducted a full search of his home without a warrant. The officers were unaware that Martinez was on parole.

We held that the search of the defendant's residence could not be justified as a parole search, stating: "Although past cases have sometimes declared that a parolee is in 'constructive custody' or 'without liberty,' '[f]ictions of "custody" and the like . . . cannot change the reality of a parolee's conditional freedom and cannot affect the constitutional protections surrounding his interest in that conditional freedom.' [Citation.] In the instant case regular police officers undertook the search pursuant to their general law enforcement duties; the officers, at the time of the search, did not even know of defendant's parole status. The investigation involved suspected criminal activity, not parole violations. Under these circumstances the officers cannot undertake a search without probable cause and then later seek to justify their actions by relying on the defendant's parole status, a status of which they were unaware at the time of their search. [Citations.]" (*In re Martinez, supra,* 1 Cal.3d 641, 646.)

Nearly 25 years later, we questioned the reasoning of *Martinez* in *In re Tyrell J., supra,* 8 Cal.4th 68. In that case, police searched the person of a juvenile probationer without knowing he was subject to a condition of probation that he " '[s]ubmit to a search . . . by any law enforcement officer.' " (*Id.* at p. 74.) The officer in *Tyrell J.* encountered the juvenile at a high school football game and conducted a pat-down search after the minor repeatedly adjusted his pants, causing the officer to suspect the juvenile was hiding a weapon. The officer did not find a weapon, but retrieved a bag of marijuana from the minor's pants. The officer was unaware that the minor was on juvenile probation subject to the condition that he " '[s]ubmit to a search of [his] person and property, with or without a warrant, by any law enforcement officer, probation officer or school official.' " (*In re Tyrell J., supra,* 8 Cal.4th 68, 74.)

This court assumed without deciding that the officer lacked sufficient cause for the search, but ruled the search was lawful nevertheless because "a

juvenile probationer subject to a valid search condition does not have a *reasonable* expectation of privacy over his or her person or property." (*In re Tyrell J., supra*, 8 Cal.4th 68, 86.) We observed that both adult and juvenile probationers " ' "have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands." ' [Citations.]" (*Id.* at p. 85.) We relied upon the decisions in *Hudson v. Palmer* (1984) 468 U.S. 517 [82 L.Ed.2d 393, 104 S.Ct. 3194], which held that a prison inmate had no expectation of privacy in his or her prison cell, and *Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602 [103 L.Ed.2d 639, 109 S.Ct. 1402], which upheld as constitutional federal regulations requiring the testing of the blood and urine of railway workers involved in certain train accidents. Acknowledging that *Hudson* and *Skinner* involved situations quite different from the circumstances involved in *Tyrell J.*, we stated: "Although the image of a train wreck in *Skinner* . . . and the prison cell in *Hudson* . . . are perhaps extreme examples, the controlling legal proposition in both cases is nevertheless apt. There, as here, the circumstances surrounding the challenged search reveal that the person's expectation of privacy is not one society is prepared to recognize as reasonable and legitimate." (*In re Tyrell J., supra*, 8 Cal.4th 68, 86.)

The court in *Tyrell J.* also relied upon the circumstance that the suspect in that case was a juvenile, observing that "imposing a strict requirement that the searching officer must always have advance knowledge of the search condition would be inconsistent with the special needs of the juvenile probation scheme. That scheme embraces a goal of rehabilitating youngsters who have transgressed the law, a goal that is arguably stronger than in the adult context." (*In re Tyrell J., supra*, 8 Cal.4th 68, 86–87.) We also recognized, however, that such advance knowledge of the search condition is desirable, because it "helps ensure that the resulting search is not conducted 'for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes.' [Citation.]" (*Id.* at p. 87.)

We acknowledged that language in our opinion in *Martinez* "appears conducive to the minor's position," but we declined to follow "the stated rationale in *Martinez* because, at the time that decision was rendered, there existed no automatic search condition imposed on parolees, inclusive of searches to be performed either by parole officers or law enforcement officers. Therefore, although the defendant in *Martinez* might have been subject to search by his parole officer, he could reasonably expect to be free of arbitrary searches by police officers. [Citation.]" (*In re Tyrell J., supra*, 8 Cal.4th 68, 88–89.)

Justice Kennard, joined by Justice Mosk, argued in her dissent that the court's basis for distinguishing our earlier decision in *Martinez* was flawed, noting that when *Martinez* was decided, "express search conditions were rarely used with parole grants because, under the doctrine of 'custodia legis,' the status of parolee was deemed sufficient in itself to justify excepting searches by parole authorities from the Fourth Amendment's warrant requirement. [Citations.] Under this view, every grant of parole included an implied search condition, and an officer's knowledge of parole status was equivalent to knowledge of a parole search condition." (*In re Tyrell J., supra,* 8 Cal.4th 68, 94 (dis. opn. of Kennard, J.).)

The majority in *Tyrell J.* observed that its opinion was "consistent with the primary purpose of the Fourth Amendment exclusionary rule," which, as noted above, " ' "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures" ' [citations]," reasoning that because the officer did not know the minor was subject to a search condition, he "took the chance that the search would be deemed improper." (*In re Tyrell J., supra,* 8 Cal.4th 68, 89.) The majority concluded, therefore, that "our reluctance to adopt a strict 'knowledge-first' rule for juvenile probation search conditions will not encourage police to engage in warrantless searches." (*Ibid.*)

Justice Kennard disagreed, stating that the majority's holding "offers police officers an incentive to search any juvenile despite the lack of probable cause and a warrant, for if it later turns out that the juvenile has a probation search condition, the fruits of the search will be admissible in court." (*In re Tyrell J., supra,* 8 Cal.4th 68, 98 (dis. opn. of Kennard, J.).)

Our holding in *Tyrell J.* that police could justify a search based upon the existence of a search condition of which they were unaware received a chilly reception. Referring to our earlier decision in *Martinez,* one commentator stated: "Regrettably, that eminently sound position was later abandoned in *In re Tyrell J.* on the bizarre reasoning that a probationer who knows that he is subject to 'a valid search condition' to his release consequently 'does not have a *reasonable* expectation of privacy over his person or property' vis-à-vis any search by anyone, including a search by a police officer unaware of the probationer status! As the dissent in *Tyrell J.* aptly noted, that strange conclusion, without precedent in *any* jurisdiction, gives police an incentive to make searches even without probable cause because, should it turn out that the suspect is a probationer, the evidence will be admissible nonetheless." (4 La Fave, Search and Seizure (3d ed. 1996) § 10.10(e), p. 792.) Other commentators have been equally unkind. (Comment, *Fourth Amendment Protections for the Juvenile Probationer After In Re Tyrell J.* (1996) 36 Santa Clara L.Rev. 865, 884 ["The court's decision is unsettling, as it erodes the

credibility of Fourth Amendment protections." (Fn. omitted.)]; Comment, *Fourth Amendment Protection for Juvenile Probationers in California, Slim or None?: In re Tyrell J.* (1995) 22 Hastings Const. L.Q. 893, 895 ["The decision in Tyrell is insupportable in fact and law."]; Note, *In re Tyrell J.: California's Application of Search and Seizure Limitations to Juvenile Probationers* (1995) 21 J. Contemp. L. 307 ["[T]he Tyrell court misapplied United States Supreme Court precedent and . . . eroded the Fourth Amendment's protections as applied to California juveniles . . . ."]; Note, *In re Tyrell J.: Children and Their Reasonable Expectations of Privacy* (1995) 25 Golden Gate U. L.Rev. 391, 414 ["In *In re Tyrell J.*, the California Supreme Court strayed from the United States Supreme Court's interpretation of the Fourth Amendment."]; contra, Comment, *The Fourth Amendment Rights of Probationers: What Remains After Waiving Their Right to be Free from Unreasonable Searches and Seizures?* (1995) 35 Santa Clara L.Rev. 1237, 1266 [urging the United States Supreme Court to adopt the holding in *Tyrell J.*].)[3]

We limited the holding in *Tyrell J.* in *People v. Robles, supra,* 23 Cal.4th 789, in which we examined whether the warrantless search of the defendant's residence was proper because, unknown to the searching officers, a cohabitant was on probation and subject to a search condition. Police conducted an unlawful search of the defendant's garage and discovered a stolen car. The next day, police learned that the defendant's brother, who shared the apartment with the defendant, was on probation and was subject to a search condition. We held the search was unlawful, because the police violated the defendant's reasonable expectation of privacy by entering the garage without a warrant and without knowledge of the brother's search condition. (23 Cal.3d at p. 800.)

We declined to extend the logic of *Tyrell J.* to validate the search of the garage, stating: "Even though a person subject to a search condition has a severely diminished expectation of privacy . . . those who reside with such a person enjoy measurably greater privacy expectations in the eyes of society." (*People v. Robles, supra,* 23 Cal.4th 789, 798.) We recognized that the extent of such a cohabitant's expectation of privacy hinged, in part, upon the searching officer's knowledge of the search condition: "[C]ohabitants need not anticipate that officers with no knowledge of the probationer's existence or search condition may freely invade their residence in the absence of a warrant or exigent circumstances. Thus, while cohabitants have no cause to complain of searches that are reasonably and objectively related to the

---

[3] One jurisdiction has followed our decision in *Tyrell J.*, but that case involved a condition of probation in which the defendant agreed to "waive 'his Fourth Amendment right against unreasonable searches and seizures' for one year." (*Anderson v. Commonwealth* (1997) 25 Va.App. 565, 567 [490 S.E.2d 274].) No comparable issue of waiver is raised in the present case, because the search condition at issue here was imposed as a condition of parole, which defendant could not refuse. (See *In re Tyrell J., supra,* 8 Cal.4th 68, 81–83.)

purposes of probation . . . they may legitimately challenge those searches that are not. *Tyrell J.*, which focused specifically on the reasonableness of a probationer's privacy expectations, does not indicate otherwise." (*Id.* at p. 799.)

We then turned to the conclusion in *Tyrell J.* that its holding is consistent with the primary purpose of the exclusionary rule—to deter future unlawful police conduct. (*In re Tyrell J., supra*, 8 Cal.4th 68, 89.) We noted in *Robles* that "residential searches present an altogether different situation." (*People v. Robles, supra*, 23 Cal.4th 789, 800.) "Notably, residences frequently are occupied by several people living together, including immediate family members and perhaps other relatives or friends, as well as guests. Allowing the People to validate a warrantless residential search, after the fact, by means of showing a sufficient connection between the residence and any one of a number of occupants who happens to be subject to a search clause, would encourage the police to engage in facially invalid searches with increased odds that a justification could be found later. It also would create a significant potential for abuse since the police, in effect, would be conducting searches with no perceived boundaries, limitations, or justification. [Citation.] The potential for abuse, with its consequent impact on the citizenry, is especially heightened in high crime areas where police might suspect probationers to live. Thus, while society generally has an interest in having all probative evidence before the court, in circumstances such as these a knowledge-first requirement is appropriate to deter future police misconduct and to effectuate the Fourth Amendment's guarantee against unreasonable searches and seizures. [Citation.]" (*Ibid.*)

Our holding in *Robles* mandates the conclusion that the search in the present case was unlawful as to Sanders. ■ As we held in *Robles*, Sanders had a reduced expectation of privacy because she was living with a parolee subject to a search condition, but she "need not anticipate that officers with no knowledge of the probationer's existence or search condition may freely invade their residence in the absence of a warrant or exigent circumstances." (*People v. Robles, supra*, 23 Cal.4th 789, 799.) ■ The circumstance that McDaniel was on parole, while the defendant's brother in *Robles* was on probation, makes no difference; the expectation of privacy of cohabitants is the same whether the search condition is a condition of probation or parole. It is clear that the search was unlawful as to Sanders.

The Attorney General conceded in the Court of Appeal that the search was unlawful as to Sanders and repeated that concession in his opening brief in this court. The Attorney General recanted that concession, however, in response to the amicus curiae brief of the California District Attorneys Association. The Attorney General now argues that although the evidence was discovered during the invalid protective sweep, "the evidence was later obtained independently during a valid parole search, untainted by the protective sweep."

The Attorney General's belated justification for the search fails. Citing *Segura v. United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599, 104 S.Ct. 3380], the Attorney General argues that "the evidence discovered in this case resulted from lawful police conduct, independent from the protective sweep." The decision in *Segura*, however, involved facts that were far different from the circumstances in the present case.

In *Segura*, law enforcement officers illegally entered the defendant's apartment to secure the premises while a search warrant was being obtained. Despite the illegal entry into the apartment, the high court held "the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as 'fruit' of the illegal entry, because the warrant and the information on which it was based were unrelated to the entry, and therefore constituted an independent source for the evidence . . . ." (*Segura v. United States, supra,* 468 U.S. 796, 799.) In the present case, it cannot be said that the parole search was unrelated to the unlawful protective sweep of the apartment. It was only after drugs were discovered during the unlawful protective sweep that Officer Davis contacted the police department and learned that McDaniel was on parole and subject to a search condition. On the record before us, we have no basis upon which to conclude that the seizure of the drugs was not the fruit of the unlawful protective sweep of the apartment.

Having concluded that the search was unlawful as to Sanders, we turn to the more difficult question of whether the search also was unlawful as to McDaniel. We did not consider in *Robles* whether a search that violates the

reasonable expectation of privacy of a cohabitant of a parolee subject to a search condition also is unlawful as to the parolee. ■ We now conclude that it is. As we recognized in *In re Martinez, supra,* 1 Cal.3d 641, 646, police cannot justify an otherwise unlawful search of a residence because, unbeknownst to the police, a resident of the dwelling was on parole and subject to a search condition. As we explain, this result flows from the rule that whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted and is consistent with the primary purpose of the exclusionary rule—to deter police misconduct.

In *Martinez,* we rejected the view "that a parolee is without any constitutional protection against unreasonable searches and seizures. [Citation.]" (*In re Martinez, supra,* 1 Cal.3d 641, 647, fn. 5.) Instead, we recognized " 'the reality of a parolee's conditional freedom and . . . the constitutional protections surrounding his interest in that conditional freedom.' [Citation.]" (*Id.* at p. 646.) ■ A parolee's expectation of privacy certainly is diminished, but it is not eliminated.[4] In *Tyrell J.,* however, we declined to follow the reasoning of *Martinez* and held instead that "a juvenile probationer subject to a valid search condition does not have a *reasonable* expectation of privacy over his or her person or property." (*In re Tyrell J., supra,* 8 Cal.4th 68, 86.)

In *People v. Reyes* (1998) 19 Cal.4th 743, 754 [80 Cal.Rptr.2d 734, 968 P.2d 445], we held that "even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy 'society is "prepared to recognize as legitimate." ' [Citations.]" (Contra, *United States v. Crawford* (9th Cir. 2003) 323 F.3d 700.) In *Reyes,* unlike the present case and *Tyrell J.,* the searching officer was aware of the existence of the search condition. In fact, the standard adopted in *Reyes,* upholding a search conducted "under the auspices of a properly imposed parole search condition," presumes the officer's awareness of the search condition, because a search cannot be conducted "under the auspices" of a search condition if the officer is unaware that the condition exists.

---

[4] In support of its holding that law enforcement "officers cannot undertake a search without probable cause and then later seek to justify their actions by relying on the defendant's parole status, a status of which they were unaware at the time of their search," the decision in *Martinez* notes that "[t]he investigation involved suspected criminal activity, not parole violations." (*In re Martinez, supra,* 1 Cal.3d 641, 646.) This observation supports the conclusion that the police were unaware of the suspect's parole status when the search was conducted. It does not suggest that a valid parole search may not be conducted for an investigatory purpose. (See *United States v. Knights, supra,* 534 U.S. 112, 120; *People v. Reyes, supra,* 19 Cal.4th 743, 752 [80 Cal.Rptr.2d 734, 968 P.2d 445].)

We recognized in *Reyes* that whether the parolee has a reasonable expectation of privacy is inextricably linked to whether the search was reasonable. ■ A law enforcement officer who is aware that a suspect is on parole and subject to a search condition may act reasonably in conducting a parole search even in the absence of a particularized suspicion of criminal activity, and such a search does not violate any expectation of privacy of the parolee. We observed in *Reyes*: "The level of intrusion is de minimis and the expectation of privacy greatly reduced when the subject of the search is on notice that his activities are being routinely and closely monitored. Moreover, the purpose of the search condition is to deter the commission of crimes and to protect the public, and the effectiveness of the deterrent is enhanced by the potential for random searches. We thus conclude a parole search may be reasonable despite the absence of particularized suspicion." (*People v. Reyes, supra*, 19 Cal.4th 743, 753.)

■ But our reasoning in *Reyes* does not apply if the officer is unaware that the suspect is on parole and subject to a search condition. Despite the parolee's diminished expectation of privacy, such a search cannot be justified as a parole search, because the officer is not acting pursuant to the conditions of parole.

In order to determine whether the search was unlawful as to McDaniel, we must examine " 'the totality of the circumstances,' " with two salient circumstances being McDaniel's parole search condition and the officer's lack of knowledge of that condition. (*United States v. Knights, supra*, 534 U.S. 112, 118.) "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' [Citation.]" (*Id.* at pp. 118–119.)

The decision in *United States v. Knights, supra*, 534 U.S. 112, upheld a search of a probationer for an "investigatory" rather than a "probationary" purpose conducted by a police officer who knew the probationer was subject to a search condition. The high court relied upon the probationer's diminished expectation of privacy and the state's dual interest in determining whether the probationer is complying with the terms of probation and protecting the community from further criminal acts by the probationer: "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." (*Id.* at p. 121.) But if an officer is unaware that a suspect is on probation and subject to a search condition, the search is not justified by the state's interest in supervising probationers or by the concern that probationers are more likely to commit criminal acts.

■   This is not to say that the validity of the search depends upon the officer's purpose. The validity of a search does not turn on "the actual motivations of individual officers." (*Whren v. United States* (1996) 517 U.S. 806, 813 [135 L.Ed.2d 89, 116 S.Ct. 1769].) But whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted. "[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him." (*Scott v. United States* (1978) 436 U.S. 128, 137 [56 L.Ed.2d 168, 98 S.Ct. 1717]; *Ornelas v. United States* (1996) 517 U.S. 690, 696 [134 L.Ed.2d 911, 116 S.Ct. 1657] [probable cause is based upon "the known facts and circumstances"]; *Illinois v. Rodriguez* (1990) 497 U.S. 177, 188 [111 L.Ed.2d 148, 110 S.Ct. 2793] ["As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises?"]; *United States v. Brignoni-Ponce* (1975) 422 U.S. 873, 884 [45 L.Ed.2d 607, 95 S.Ct. 2574] [Officers stopping vehicles on roving patrols must be "aware of specific articulable facts" that justify the stop.]; *Henry v. United States* (1959) 361 U.S. 98, 102 [4 L.Ed.2d 134, 80 S.Ct. 168] ["Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."]; *Carroll v. United States* (1925) 267 U.S. 132, 149 [69 L.Ed. 543, 45 S.Ct. 280] [probable cause must be based upon "a belief, reasonably arising out of circumstances known to the seizing officer"].)

■   The requirement that the reasonableness of a search must be determined from the circumstances known to the officer when the search was conducted is consistent with the primary purpose of the exclusionary rule—to deter police misconduct. The rule serves " 'to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' " (*Mapp v. Ohio* (1961) 367 U.S. 643, 656 [6 L.Ed.2d 1081, 81 S.Ct. 1684].) "The rule also serves another vital function— 'the imperative of judicial integrity.' [Citation.] Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions. Thus, in our system, evidentiary rulings provide the context in which the judicial process of inclusion and exclusion approves some conduct as comporting with constitutional guarantees and disapproves other actions by state agents. A ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence, while an application of the exclusionary rule withholds the constitutional imprimatur." (*Terry v. Ohio* (1968) 392 U.S. 1, 12–13

[20 L.Ed.2d 889, 88 S.Ct. 1868]; *Stone v. Powell, supra,* 428 U.S. 465, 492 ["this demonstration that our society attaches serious consequences to violation of constitutional rights is thought to encourage those who formulate law enforcement policies, and the officers who implement them, to incorporate Fourth Amendment ideals into their value system" (fn. omitted)].)

Thus, the admission of evidence obtained during a search of a residence that the officer had no reason to believe was lawful merely because it later was discovered that the suspect was subject to a search condition would legitimize unlawful police conduct. ■ Accordingly, we hold that an otherwise unlawful search of the residence of an adult parolee may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted.[5]

An additional reason for suppressing the evidence obtained in the search of the residence in the present case, where the police were unaware that one of the residents was subject to a search condition, is to protect the rights of the parolee's cohabitants and guests. As we recognized in *Robles,* and as is demonstrated by the circumstances of the present case, a search of the residence of a person subject to a search condition often affects the rights of cohabitants and guests as well. Permitting evidence that has been suppressed as to a cohabitant to be used against the parolee would encourage searches that violate the rights of cohabitants and guests by rewarding police for conducting an unlawful search of a residence.

As we noted in *Robles*: "Many law-abiding citizens might choose not to open their homes to probationers [or parolees] if doing so were to result in the validation of arbitrary police action. If increased numbers of probationers were not welcome in homes with supportive environments, higher recidivism rates and a corresponding decrease in public safety may be expected, both of which would detract from the 'optimum successful functioning' of the probation system." (*People v. Robles, supra,* 23 Cal.4th 789, 799.) The assurance that evidence discovered during such an arbitrary search could not be used against the "law-abiding citizen" would provide little solace if the police still were encouraged to conduct such unlawful searches by permitting them to use any evidence discovered against the probationer or parolee. "The potential for abuse, with its consequent impact on the citizenry, is especially heightened in high crime areas where police might suspect probationers to live." (*Id.* at p. 800.)

---

[5] In its amicus curiae brief, the California District Attorneys Association argues that the holding in *Tyrell J.* was correct because "The Special Needs of the Juvenile Probation Scheme Emanating from the Doctrine of *Parens Patriae* Allows a Juvenile Probationer Only a Residual Right to be Free from Arbitrary, Capricious and Harassing Searches." Because this case does not involve a juvenile, we need not, and do not, decide this issue.

We held in *Robles* that permitting police to use a search condition to justify the search of a residence when the officer was unaware of the probation condition serves to encourage unlawful police conduct, especially in neighborhoods in which a higher than average number of persons are on probation. (*People v. Robles, supra,* 23 Cal.4th 789, 800 [97 Cal.Rptr.2d 914, 3 P.3d 311].) The same would be true if we permitted the People to admit the evidence only against the person subject to the search condition, rather than against all of the occupants of the residence. The police still would be encouraged to engage in facially invalid searches in the hope that at least one of the occupants would be subject to a search condition. Suppressing the evidence only as to cohabitants of a person subject to a search condition, but not as to the probationer or parolee, would do little to decrease the chance that a person living with a probationer or parolee would be the victim of an unlawful search and would largely eviscerate the protections granted in *Robles.*

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

George, C. J., Werdegar, J., and Chin, J., concurred.

**KENNARD, J.** —For reasons stated in my dissenting opinion in *In re Tyrell J.* (1994) 8 Cal.4th 68, 96 [32 Cal.Rptr.2d 33, 876 P.2d 519] (*Tyrell J.*), I here agree with the majority's holding invalidating the search of the apartment occupied by parolee Kenton Michael McDaniel and his cohabitant, Arlene Dena Sanders. Here, as in *Tyrell J.,* the issue is whether, under the Fourth Amendment to the United States Constitution, a search may be validated after the fact by reliance on a search condition unknown to the searching officer at the time of the search. In each case, the search condition had been imposed without the agreement or consent of the person later subjected to the search. In each case, consideration of the purpose of the Fourth Amendment, to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials" (*Camara v. Municipal Court* (1967) 387 U.S. 523, 528 [18 L.Ed.2d 930, 87 S.Ct. 1727]), leads to the conclusion that the search was unlawful.

### I

The federal Constitution's Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." The United States Supreme Court has said: " '[S]earches conducted outside the judicial process, without prior

approval by a judge or magistrate, are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' " (*Coolidge v. New Hampshire* (1970) 403 U.S. 443, 454–455 [29 L.Ed.2d 564, 91 S.Ct. 2022].)

At issue in *Tyrell J.* was the warrantless search of a minor at a school football game. When the minor moved to suppress the marijuana found during that search, the prosecution sought to justify it based on a condition of the minor's juvenile probation in an earlier unrelated case that he submit " 'to a search of [his] person and property, with or without a warrant, by any law enforcement officer, probation officer or school official.' " The juvenile court denied the suppression motion and declared the minor a ward of the court. (*Tyrell J., supra,* 8 Cal.4th at pp. 74–75.) The Court of Appeal reversed, reasoning that "the fortuity of the search condition did not validate the otherwise improper search" by a police officer who did not know of the search condition. (*Id.* at p. 75.)

A majority of this court disagreed with that holding, concluding that to impose "a strict requirement that the searching officer must always have advance knowledge of the search condition would be inconsistent with the special needs of the juvenile probation scheme." (*Tyrell J., supra,* 8 Cal.4th at pp. 86–87.) Because of those "special needs," the *Tyrell J.* majority reasoned, a juvenile probationer subject to a search condition must "assume every law enforcement officer might stop and search him at any moment." (*Id.* at p. 87.)

In expressing a different view in my dissenting opinion, joined by Justice Mosk, I relied on two decisions, *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734] and *People v. Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174], in which this court had held that the prosecution may not rely on a probation or parole search condition when the searching officer did not know of its existence. (See *Tyrell J., supra,* 8 Cal.4th at p. 94 (dis. opn. of Kennard, J.).) Embracing that view in this case, the majority invalidates the warrantless search of the apartment occupied by defendants Sanders and McDaniel because at the time of the search the officers did not know that McDaniel was on parole and therefore subject to a parole condition that he submit to warrantless searches. (Maj. opn., *ante,* at p. 335.) Left open by the majority here is the continuing vitality of the majority opinion in *Tyrell J.,* which upheld an officer's warrantless search of a minor based upon the minor's probation search condition of which the officer conducting the search was unaware.

I would draw no distinction between the warrantless search of an adult parolee and the warrantless search of a juvenile probationer. As to each, I

would apply the same analysis: Neither search can later be justified by information such as the search condition in this case that was unknown to the searching officer.

## II

I have an additional observation about the majority's analysis. As I noted at the outset, the purpose of the Fourth Amendment is to safeguard the right to be free from unreasonable searches and seizures. (See *Tyrell J.*, *supra*, 8 Cal.4th at p. 98 (dis. opn. of Kennard, J.).) Throughout the opinion, the majority in this case refers to the exclusionary rule's goal of deterring unlawful police conduct as supporting its holding that the search here cannot be justified by a parole search condition of which the searching officers were ignorant. But that goal is not relevant in determining whether a particular search or seizure violates the Fourth Amendment, which is the issue here. The exclusionary rule's purpose comes into play only when the inquiry is whether unlawfully obtained evidence must be suppressed. As the United States Supreme Court has pointed out: "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether . . . Fourth Amendment rights . . . were violated by police conduct.' " (*United States v. Leon* (1984) 468 U.S. 897, 906 [82 L.Ed.2d 677, 104 S.Ct. 3405].) Here, there is no dispute between the parties that any evidence seized unlawfully from defendants cannot be used against them in a criminal trial. Thus, not at issue here is whether unlawful police conduct justifies suppression of evidence. Unlike the majority, therefore, I see no need to consider the deterrent effect of the exclusionary rule.

### CONCLUSION

For the reasons given, I join the majority in affirming the Court of Appeal's judgment invalidating the search of the apartment occupied by defendants Sanders and McDaniel.

**BROWN, J.**—I fully concur in the majority's determination that as to both defendants the search of their residence cannot be justified by a parole search condition of which the officers were ignorant at the time. I write separately because I question the majority's references to—and ostensible reliance on—the deterrent purpose of the exclusionary rule to support its analysis of the scope of Fourth Amendment protections. (See maj. opn., *ante*, at pp. 324, 334.)

"The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands . . . ." (*United States v. Leon* (1984) 468 U.S. 897, 906 [82 L.Ed.2d 677, 104 S.Ct. 3405].) The

exclusionary rule "thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' [Citation.]" (*Ibid.*) Accordingly, "[w]hether the exclusionary sanction is appropriately imposed in a particular case"—and hence the relevance of its deterrence purpose—"is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' [Citation.]" (*Ibid.*) This distinction logically follows from the fact that an exclusionary remedy presupposes some illegality. (See *United States v. Peltier* (1975) 422 U.S. 531, 539 [45 L.Ed.2d 374, 95 S.Ct. 2313]; *Michigan v. Tucker* (1974) 417 U.S. 433, 447 [41 L.Ed.2d 182, 94 S.Ct. 2357].) In other words, until police officers conduct an unlawful search or seizure, the question of sanction or deterrence does not arise.

A review of United States Supreme Court decisions discussing the purpose of the exclusionary rule confirms this premise. In each case, the court was not determining if the defendant had suffered a constitutional violation but whether—given a violation—illegally obtained evidence could nevertheless be admitted, i.e., whether under the circumstances exclusion would advance the goal of deterring future police misconduct. For example, in *United States v. Leon, supra,* 468 U.S. 897, the court considered whether the deterrent effect of the exclusionary rule justified extending its scope to evidence seized pursuant to a facially valid warrant later found unsupported by probable cause. (See *id.* at pp. 908–912, 918–919.) In *United States v. Calandra* (1974) 414 U.S. 338 [38 L.Ed.2d 561, 94 S.Ct. 613], the question was whether the exclusionary rule should apply to grand jury proceedings. Similarly, in *United States v. Janis* (1976) 428 U.S. 433 [49 L.Ed.2d 1046, 96 S.Ct. 3021], the court considered its application to federal civil proceedings where evidence had been illegally seized by state officials.[1]

---

[1] See *Illinois v. Krull* (1987) 480 U.S. 340 [94 L.Ed.2d 364, 107 S.Ct. 1160] (question whether exclusionary rule applies to evidence obtained in objectively reasonable reliance on statute subsequently found unconstitutional); *Nix v. Williams* (1984) 467 U.S. 431 [81 L.Ed.2d 377, 104 S.Ct. 2501] (question whether to adopt inevitable discovery exception to exclusionary rule); *United States v. Payner* (1980) 447 U.S. 727 [65 L.Ed.2d 468, 100 S.Ct. 2439] (question whether to extend exclusionary rule to evidence seized from third party); *Rakas v. Illinois* (1979) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421] (question whether exclusionary rule extends to evidence seized in automobile in which defendant had no property or possessory interest); *United States v. Ceccolini* (1978) 435 U.S. 268 [55 L.Ed.2d 268, 98 S.Ct. 1054] (question whether scope of exclusionary rule should extend to witness's testimony); *Mapp v. Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684] (question whether exclusionary rule applies in state court proceedings); *Walder v. United States* (1954) 347 U.S. 62 [98 L.Ed. 503, 74 S.Ct. 354] (question whether exclusionary rule extends to use of illegally seized evidence to impeach defendant's trial testimony); cf. *United States v. Johnson* (1982) 457 U.S. 537 [73 L.Ed.2d 202, 102 S.Ct. 2579] (question whether decision construing Fourth Amendment should apply retroactively); *Stone v. Powell* (1976) 428 U.S. 465 [49 L.Ed.2d 1067, 96 S.Ct. 3037] (question whether exclusionary remedy extends to federal habeas corpus proceedings).

Here, we confront a threshold Fourth Amendment question: whether the officers conducted an illegal search because they were unaware at the time that Kenton Michael McDaniel was subject to a parole search condition, which would have otherwise validated their conduct. (See *People v. Woods* (1999) 21 Cal.4th 668, 681–682 [88 Cal.Rptr.2d 88, 981 P.2d 1019]; *People v. Reyes* (1998) 19 Cal.4th 743, 754 [80 Cal.Rptr.2d 734, 968 P.2d 445]; cf. *In re Tyrell J.* (1994) 8 Cal.4th 68, 89–90 [32 Cal.Rptr.2d 33, 876 P.2d 519].) Until we know they acted unlawfully, deterrence is not at issue because the matter of sanction has not yet arisen. And the fact that deterrence is the primary purpose of the exclusionary rule does not assist in analyzing the predicate question.

Until *In re Tyrell J., supra,* 8 Cal.4th 68, and *People v. Robles* (2000) 23 Cal.4th 789 [97 Cal.Rptr.2d 914, 3 P.3d 311], this court's search and seizure jurisprudence was generally consistent with the United States Supreme Court's view that the purpose of the exclusionary rule was relevant to the scope of the remedy, not the contours of the constitutional right itself.[2] Both of these decisions concerned the legality of the officers' conduct, not the appropriateness of excluding the evidence. In *Tyrell J.,* however, the court's analysis for the first time—perhaps to shore up a constitutionally suspect result—included reference to the "primary purpose of the Fourth Amendment" as part of its rationale. (*Tyrell J.,* at p. 89.) The misstep instigated by *Tyrell J.* was compounded in *Robles* with a similar discussion. (*Robles,* at pp. 799–800.)

Now, once again, the majority embraces the same misdirected reasoning. Error, however, does not improve with repetition. The third time is not the charm. The deterrent purpose of the exclusionary rule is not a consideration in assessing the totality of the circumstances affecting the reasonableness of a search. While conflating Fourth Amendment principles does not produce an incorrect result in this case, we should avoid sloppy analysis that could cause future mischief.

---

[2] See, e.g., *People v. Phillips* (1985) 41 Cal.3d 29, 79 [222 Cal.Rptr. 127, 711 P.2d 423]; *In re William G.* (1985) 40 Cal.3d 550, 568, fn. 17 [221 Cal.Rptr. 118, 709 P.2d 1287]; *Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 38–39 [196 Cal.Rptr. 704, 672 P.2d 110]; *People v. Teresinski* (1982) 30 Cal.3d 822, 837–838 [180 Cal.Rptr. 617, 640 P.2d 753]; *People v. Cook* (1978) 22 Cal.3d 67, 82–83 [148 Cal.Rptr. 605, 583 P.2d 130]; see also *In re Lance W.* (1985) 37 Cal.3d 873, 882–883 [210 Cal.Rptr. 631, 694 P.2d 744]; *Dyas v. Superior Court* (1974) 11 Cal.3d 628, 632–633 [114 Cal.Rptr. 114, 522 P.2d 674]; but see *People v. Miller* (1972) 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228]; *Mann v. Superior Court* (1970) 3 Cal.3d 1, 8 [88 Cal.Rptr. 380, 472 P.2d 468].

**BAXTER, J.,** Concurring and Dissenting.—In *United States v. Knights* (2001) 534 U.S. 112 [151 L.Ed.2d 497, 122 S.Ct. 587] (*Knights*), the United States Supreme Court recently reminded courts to " 'examin[e] the totality of the circumstances' " when determining whether a warrantless search violates a defendant's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. (*Knights, supra,* 534 U.S. at p. 118.) Disregarding that admonishment, the majority holds here that if police officers do not know a defendant is a parolee when searching the defendant's home without a warrant, the circumstance that the defendant is in fact subject to a parole term that provides legal authority for the search is absolutely irrelevant to the search's validity. But a parole search term significantly diminishes a defendant's reasonable expectation of privacy, whether or not the searching officers know the defendant is on parole. Accordingly, I find that, whether or not the officers are aware of it, a defendant's status as a parolee with a validly imposed parole search term warrants full consideration in assessing a search's reasonableness under the "totality of the circumstances" test.

The precise question here is whether police officers violated the Fourth Amendment rights of defendants Kenton Michael McDaniel and Arlene Dena Sanders when they responded to a report of a loud and apparently physical domestic dispute in progress at defendants' apartment unit and then searched the unit without a warrant and without knowing that McDaniel was on parole. The majority gives no weight to the circumstance that McDaniel's parole terms authorized the officers to search his home when investigating the reported dispute. The majority further concludes that the officers' lack of knowledge regarding McDaniel's parolee status renders the search constitutionally invalid as to both defendants.

I concur in the majority's decision that the search infringed upon defendant Sanders's constitutional right to be free from unreasonable searches and seizures. " '[E]xamining the totality of the circumstances' " (*Knights, supra,* 534 U.S. at p. 118), however, I conclude otherwise with respect to defendant McDaniel. Even though the officers did not know McDaniel was a parolee when they arrived at the apartment and conducted the challenged search, that circumstance did not meaningfully alter or increase McDaniel's legitimate expectation of privacy as a parolee in that situation. I therefore would affirm McDaniel's conviction.

### I.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause,

supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.)

The rules and regulations governing the California parole system authorize any law enforcement officer to search a parolee and his or her residence at any time without a warrant. (Pen. Code, § 3052; Cal. Code Reg., tit. 15, § 2511, subd. (b)(4).) "The state has a duty not only to assess the efficacy of its rehabilitative efforts [with respect to parolees] but to protect the public, and the importance of the latter interest justifies the imposition of a warrantless search condition." (*People v. Reyes* (1998) 19 Cal.4th 743, 752 [80 Cal.Rptr.2d 734, 968 P.2d 445] (*Reyes*).)

This case requires us to evaluate the reasonableness of a warrantless search of the home of a parolee who was subject to a validly imposed search term. "Pursuant to California Constitution, article I, section 28, subdivision (d), we review challenges to the admissibility of evidence obtained by police searches and seizures under federal constitutional standards. [Citations.]" (*People v. Woods* (1999) 21 Cal.4th 668, 674 [88 Cal.Rptr.2d 88, 981 P.2d 1019].) Application of those standards leads me to conclude that the challenged search did not violate McDaniel's Fourth Amendment rights.

In *Knights, supra,* 534 U.S. 112, the United States Supreme Court reiterated the now familiar principle that "[t]he touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' [Citation.]" (*Knights, supra,* 534 U.S. at pp. 118–119.) Under the high court's general Fourth Amendment approach, courts " 'examin[e] the totality of the circumstances' " to evaluate whether a particular warrantless search was reasonable. (*Id.* at p. 118.)

Here, the factual circumstances surrounding the challenged search are undisputed. Defendant McDaniel was a parolee. He was subject to a lawfully imposed parole search term that put him on notice that any law enforcement officer might search his person and his residence at any time without a warrant. While in their apartment, defendants McDaniel and Sanders engaged in a loud fight that led neighbors to call the police. When police officers arrived and knocked on the door, someone deadbolted the door, refusing them entry. Eventually Sanders opened the door and allowed the officers inside. At that point, the officers saw McDaniel hide something metallic behind a couch cushion. The officers also observed that Sanders appeared to have been in a physical altercation, with a fresh abrasion on her face. Sanders and McDaniel soon became belligerent and combative with the officers. McDaniel demanded that they leave the apartment, even though his parolee status entitled

the officers to stay and to search him and his residence without a warrant. After handcuffing both defendants, the officers made a protective sweep of the other rooms of the apartment to check for third persons. During this sweep, the officers saw a boot containing drug contraband in plain view in an open closet of one of the bedrooms. After seeing the boot, the officers contacted the police department and learned that McDaniel was on parole and subject to a search term. They requested assistance and conducted a parole search of the apartment. The contraband was seized, and a pair of scissors was recovered from between the couch cushions.

Defendants do not challenge the validity of the officers' entry into the apartment, but argue it was unlawful for the officers to search the apartment after handcuffing them. The majority agrees with defendants. Assuming the officers' protective sweep was, as the Court of Appeal found, unlawful under *Maryland v. Buie* (1990) 494 U.S. 325 [108 L.Ed.2d 276, 110 S.Ct. 1093],[1] the majority concludes it was not justified as a parole search because the officers did not know when they made the sweep that McDaniel was on parole. I disagree. Given the totality of the circumstances surrounding the challenged search, I find it did not violate the parolee's Fourth Amendment right to privacy. My reasons are as follows.

Following *Knights*'s totality-of-the-circumstances analysis, I first examine the degree to which the search intruded on the parolee's reasonable expectation of privacy. On this score, it is settled that an individual's " 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' " (*Minnesota v. Carter* (1998) 525 U.S. 83, 88 [142 L.Ed.2d 373, 119 S.Ct. 469].) For a person to have a legitimate expectation of privacy, he or she must have manifested a subjective expectation of privacy in the object of the challenged search, and that expectation must be one society recognizes as reasonable. (*California v. Ciraolo* (1986) 476 U.S. 207, 211 [90 L.Ed.2d 210, 106 S.Ct. 1809]; *People v. Robles* (2000) 23 Cal.4th 789, 795 [97 Cal.Rptr.2d 914, 3 P.3d 311]; *In re Tyrell J.* (1994) 8 Cal.4th 68, 83 [32 Cal.Rptr.2d 33, 876 P.2d 519].)

Here, McDaniel was subject to a lawfully imposed search term that expressly applied both to his person and to his residence. There appears no reason to doubt that McDaniel was unambiguously informed of this term. The existence of this search term is, as the United States Supreme Court puts it, a "salient circumstance" in the analysis. (*Knights, supra,* 534 U.S. at p. 118 [describing a probation search condition as a "salient circumstance"].) But whatever *subjective* expectation of privacy McDaniel may have had with

[1] The majority expresses no view regarding this aspect of the Court of Appeal's analysis (maj. opn., *ante,* at p. 324, fn. 2), and neither do I.

respect to the illegal drugs in his apartment bedroom, the parole search term significantly diminished his *reasonable* expectation of privacy in the same way that a search condition significantly diminishes a probationer's reasonable expectation of privacy. (See *id.* at pp. 119–120.)

*Knights* next calls for assessing the degree to which a warrantless search of a parolee is " 'needed for the promotion of legitimate governmental interests.' " (*Knights, supra,* 534 U.S. at p. 119.) Plainly, the governmental interests at stake here are legitimate and well established. "As a convicted felon still subject to the Department of Corrections, a parolee has conditional freedom—granted for the specific purpose of monitoring his transition from inmate to free citizen. The state has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public, and the importance of the latter interest justifies the imposition of a warrantless search condition." (*Reyes, supra,* 19 Cal.4th at p. 752.) The state's requirement of search terms for parolees "is triggered by [the parolee's] own conduct. The existence of this triggering event—the crime which results in conviction . . . —creates the compelling need for government intervention and diminishes any reasonable expectation of privacy." (*Ibid.*)

The high court similarly recognizes that a state's "interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on *probationers* in a way that it does not on the ordinary citizen." (*Knights, supra,* 534 U.S. at p. 121, italics added.) A parolee such as McDaniel, however, presents a much more serious risk to society than a probationer, in that a parolee is not placed on probation but is sent to prison, either because of the seriousness of his or her crimes or because of criminal recidivism that warrants a state prison sentence. A fortiori, a state's interest in protecting the public is even greater in the case of parolees, who more so than probationers have demonstrated a "proclivity for anti-social criminal, and often violent, conduct" and an inability "to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint." (*Hudson v. Palmer* (1984) 468 U.S. 517, 526 [82 L.Ed.2d 393, 104 S.Ct. 3194] [describing prisoners].)

Relying on *New Jersey v. T.L.O.* (1985) 469 U.S. 325, 337–338 [83 L.Ed.2d 720, 105 S.Ct. 733], and other high court authority, *Reyes* observed there are two additional factors relevant to determining whether a challenged intrusion is justified: the necessity for the intrusion, and the procedure used in conducting the search. (*Reyes, supra,* 19 Cal.4th at p. 751.) In our case, both of these factors support the reasonableness of the search as to the parolee. As noted, in this case the police officers did not decide randomly or arbitrarily to investigate an individual and search his house without justification, hoping to find evidence of criminal activity. Rather, the parolee's own conduct—

participating in an altercation that caused concerned neighbors to call police—prompted the police to come to the parolee's apartment. Also, what the officers saw in plain view—a fresh abrasion on Sanders's face, McDaniel's attempt to hide something metallic behind a couch cushion, and both defendants' becoming belligerent and combative toward them—prompted them to handcuff both defendants and to make a protective sweep of the residence. Although the officers evidently misjudged the propriety of a protective sweep in the situation before them, the procedure they employed was in fact no more invasive or violative of McDaniel's privacy than what he could reasonably expect, given his parole search term and his conduct. Indeed, as a parolee involved in a loud, and apparently physical, domestic dispute, McDaniel should fully have expected police intervention and invocation of his parole search term. The fact that the searching officers did not know of the parole term at the outset of their involvement did not, from McDaniel's perspective, meaningfully alter or increase any reasonable expectation of privacy he may have had as a parolee in those circumstances.

## II.

Because our decisions and those of the high court uniformly instruct courts to examine *the totality of the circumstances* when evaluating the reasonableness of a warrantless search, it is wrong as a matter of law for the majority to regard only one factor as controlling, i.e., the searching officers' lack of knowledge that McDaniel was a parolee. (See *Ohio v. Robinette* (1996) 519 U.S. 33, 39 [136 L.Ed.2d 347, 117 S.Ct. 417] ["we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry"].)

While lack of knowledge certainly is significant, the search here was reasonable in light of all the following circumstances: (1) when the officers conducted the search, McDaniel was subject to a parole search term that provided legal authority and a valid justification for the search; (2) McDaniel's expectation of privacy in his home was greatly reduced due to his parolee status and parole search term; (3) the officers did not go to defendants' apartment arbitrarily or capriciously or for purposes of harassing the occupants; rather, defendants' engagement in a loud and apparently physical fight, their belligerence, and McDaniel's suspicious hiding of a metallic object, prompted the officers' involvement and actions; (4) the officers acted with what they believed was proper justification in making the protective sweep; (5) although, given their grasp of the situation, the officers apparently misjudged the propriety of a protective sweep, that sweep was in fact not intrusive of McDaniel's privacy expectations, because his parole terms expressly authorized it, and he could reasonably have expected it, given the circumstances that brought the officers to his door; and (6) the government's

significant interests in deterring parolees from criminal activity and protecting the public from their crimes would be advanced by our finding the search reasonable as to McDaniel and allowing admission of the drug contraband evidence at his criminal trial.

The majority properly acknowledges that a search's validity does not turn on the individual officers' actual motivations. (Maj. opn., *ante*, at p. 334.) But by evaluating the search's reasonableness with reference to only those "circumstances *known to the officer* when the search is conducted" (*ibid.*, italics added), the majority fails to " 'examin[e] the totality of the circumstances' " (*Knights, supra,* 534 U.S. at p. 118). In so doing, the majority effectively rejects the high court's determination that a lawfully imposed search term "significantly diminish[es]" one's "reasonable expectation of privacy" (*id.* at p. 120) and is "a salient circumstance" in the analysis (*id.* at p. 118).

Moreover, the majority is demonstrably wrong in concluding that actual circumstances may never validate a search where the facts known or otherwise available to the searching officer would not have justified a person of reasonable caution in the belief that a search was appropriate. In a consensual search, for instance, it generally is accepted that the facts available to the officer when conducting a search must cause the officer to have a reasonable belief that a third party who consents has authority over the premises to be searched. But if the facts do not give rise to such reasonable belief, then the officer's "warrantless entry without further inquiry is unlawful *unless authority actually exists.*" (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 188–189 [111 L.Ed.2d 148, 110 S.Ct. 2793], italics added.) Hence, by excluding consideration of the circumstance that a lawful basis for the search (i.e., the parole search term) existed at the time of the officers' protective sweep, the majority disregards this established Fourth Amendment principle.

The majority's rule leads to absurd consequences, as the following two hypothetical scenarios illustrate.

First, let us assume facts very similar to those here. Police officers respond to a report of a loud fight between X and Y at their apartment. The officers' arrival stops the fight, but both X and Y begin to act belligerently toward the officers, who handcuff them. Rather than conducting a protective sweep, the officers immediately call the police department. They are told, erroneously, that neither disputant is a probationer, but that Y is a parolee. Relying on this *incorrect* information, the officers search the apartment unit and find illegal drugs, which they seize, in Y's open closet. A day later, the officers discover that, in fact, Y's parole had long since expired, but he currently is on probation subject to a search condition. Under these circumstances, the

officers' good faith reliance on the outdated and erroneous parole status information would not validate the search of Y's closet (*People v. Willis* (2002) 28 Cal.4th 22 [120 Cal.Rptr.2d 105, 46 P.3d 898]), and according to the majority's analysis, the search would have intruded unreasonably upon Y's Fourth Amendment rights because, notwithstanding Y's significantly diminished expectation of privacy as a probationer, the officers did not know that Y was on probation (in fact, they were led to believe that probation was not an issue), and they consequently acted without a probation-related purpose.

Second, let us assume that police officers respond to a report of a loud fight between X and Y at a house Y owns. Again, the officers' arrival stops the fight, but both X and Y begin to act belligerently toward the officers, who handcuff them. The officers immediately call the police department and are told, again erroneously, that neither disputant is a probationer, but that Y is a parolee. Relying on this incorrect information, the officers search the house and find firearms, which they seize, in one of the bedrooms. After arresting Y, the officers discover that Y's parole had long since expired, but that he in fact had escaped from prison after a later conviction. As in the previous hypothetical, the officers' good faith reliance on the erroneous parole status information does not validate the search of the bedroom. (*People v. Willis, supra,* 28 Cal.4th 22.) But even though Y had virtually no reasonable expectation of privacy as a prison escapee, the majority's analysis would deem the search unreasonable within the meaning of the Fourth Amendment because the officers did not know of Y's status as an escapee when they conducted the search. Neither of these results makes any logical sense.

As indicated, *Knights, supra,* 534 U.S. 112, and *Illinois v. Rodriguez, supra,* 497 U.S. 177, both support my position that courts may properly consider facts not available to an officer in evaluating the reasonableness of a warrantless search. Apart from these two decisions, however, the other authorities the majority cites largely are inapposite (see maj. opn., *ante,* decisions cited at p. 334), for none considered the reasonableness of a search pertaining to a defendant whose expectation of privacy had been drastically reduced due to a lawfully imposed search term or search condition.

Moreover, in proposing to find constitutional violations as to *both* defendants here, the majority unduly emphasizes the fact that a residence is involved and fails to heed the controlling principle that "the Fourth Amendment protects people, not places." (*Katz v. United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 88 S.Ct. 507].) That a search may be deemed valid as to one occupant of a residence but invalid as to another comports fully with the high court's teaching that "the legitimacy of certain privacy expectations

vis-á-vis the State may depend upon the individual's legal relationship with the State." (*Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 654 [132 L.Ed.2d 564, 115 S.Ct. 2386].) And as this court has itself recognized, "[t]hat persons under the same roof may legitimately harbor differing expectations of privacy is consistent with the principle that one's ability to claim the protection of the Fourth Amendment depends upon the reasonableness of his or her individual expectations." (*People v. Robles, supra*, 23 Cal.4th at p. 798; accord, *People v. Hernandez* (1996) 218 A.D.2d 167 [639 N.Y.S.2d 423, 426–427] [suppression of evidence found inappropriate in case against a prison escapee, but appropriate in case against the escapee's homeowner brother].) Therefore, even though a parolee's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be reasonable (see *Griffin v. Wisconsin* (1987) 483 U.S. 868, 873 [97 L.Ed.2d 709, 107 S.Ct. 3164] [concluding the same in the context of probationers]), parolees remain properly subject to specific constraints on their privacy that would not be constitutional if applied to their cohabitants and the public at large (see *id.* at p. 875).

Finally, relying on *People v. Robles, supra*, 23 Cal.4th 789, the majority erroneously concludes that suppressing the evidence here as to the parolee, in addition to the nonparolee cohabitant, is necessary to deter police misconduct. (See maj. opn., *ante*, at p. 335.) Applying the suppression sanction in the nonparolee's case is appropriate, of course, because her Fourth Amendment privacy interests were in fact violated. (*People v. Robles, supra*, 23 Cal.4th at pp. 798–800.) But the majority unjustifiably extends the suppression sanction for the benefit of the parolee, whose constitutional privacy interests were not violated, in order to "decrease the chance that a person living with a probationer or parolee would be the victim of an unlawful search." (Maj. opn., *ante*, at pp. 798–800.) That is just plain wrong and gives the parolee a huge and undeserved windfall. (*Rakas v. Illinois* (1978) 439 U.S. 128, 134 [58 L.Ed.2d 387, 99 S.Ct. 421] ["it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections"].) Nothing in *People v. Robles* or any other authority supports such a novel and disproportional approach to deterring potential police misconduct.

## III.

In sum, McDaniel's parolee status and the search term to which he was subject severely diminished any reasonable expectation of privacy McDaniel may have had in his home and provided legal authority for the challenged search. Although the police officers initially knew nothing of McDaniel's parolee status, their sweep search was in actuality no more intrusive of McDaniel's privacy than what his parole terms expressly authorized. Finally,

even though the officers may have misjudged the propriety of a protective sweep in the situation facing them, no decision to conduct a search should have surprised McDaniel, in light of his participation in the events that brought the officers to his door.

Given the totality of these circumstances, I find the challenged search did not violate McDaniel's Fourth Amendment right to be free from unreasonable searches and seizures. Moreover, finding the search reasonable in circumstances such as these—where a parolee's search term provides a legal basis for a warrantless search when the parolee's involvement in an altercation and criminal wrongdoing is at issue—would advance the significant governmental interests in deterring parolees from criminal activity and protecting the public from their crimes.

I would affirm defendant McDaniel's conviction.

Respondent's petition for a rehearing was denied October 22, 2003, and the opinion was modified to read as presented above. Brown, J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.