### UNITED STATES of America,

### v.

### Robert C. LEE.

### Criminal Action No. 99–499.

United States District Court,
E.D. Pennsylvania.

Jan. 25, 2000.

---

Judy Goldstein Smith, Michael L. Levy, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Elizabeth Ainslie, Denise Wolf, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Robert C. Lee.

## MEMORANDUM ON GOVERNMENT'S MOTION FOR RECONSIDERATION

DALZELL, District Judge.

Upon defendant Lee's motion, we on January 20, 2000 dismissed Count 10 of the Superseding Indictment, which charged him with bankruptcy fraud, 18 U.S.C. § 157(2). In that decision, we found that, given the narrow construction that we are obliged to give criminal statutes, especially unconstrued new ones, the language and legislative history (such as it is) of the bankruptcy fraud statute did not support a charge against Lee where his pertinent filing with the bankruptcy court (1) post-dated the receipt of the alleged fruits of the scheme to defraud [1], and (2) was "concealing" only in the sense that the filing omitted reference to the allegedly fraudulent receipt of funds.

We also noted that it would be improper, on the bare language of the statute, to regard a bankruptcy filing under the bankruptcy fraud statute in the same way a mailing is regarded with respect to the mail fraud statute [2], and that it would also be improper to criminalize an omission in a bankruptcy filing in the same fashion that such an omission is penalized by, for example, § 10b of the Securities Exchange Act of 1934.[3]

With trial scheduled to have begun yesterday, the Government late Friday afternoon, January 21, moved for reconsideration of this decision.[4]

---

1. And consequently, we found, could not be construed as having "executed" the fraud because it did not "follow out into effect, [or] carry out" the scheme, *see* V *The Oxford English Dictionary* 520, def. 1 (1989 ed.). As the OED points out, this understanding of *execute* has been constant since the time of Chaucer.

2. Whose language is to some extent mirrored by 18 U.S.C. § 157.

3. Notwithstanding that such an omission may have been in violation of, *inter alia*, Lee's fiduciary duties.

4. While the Federal Rules of Criminal Procedure do not contain a rule specifically dis-

The Government argues in support of its twelfth-hour motion that Congress, in using the "scheme or artifice to defraud" language, intended that the bankruptcy fraud statute should be interpreted in the same broad fashion as the mail fraud statute, as opposed to the narrow reading that we have given it. The Government cites three bases for this contention.

First, it argues that legislative history and judicial interpretation show that other fraud statutes [5] which were passed after the mail fraud statute and which also contain the "scheme or artifice" language are properly construed as broadly as is the mail fraud statute [6], and that consequently the new bankruptcy fraud statute should be construed broadly. The Government also claims that Congress wants fraud statutes to be construed broadly, as demonstrated by the use of similar "scheme or artifice to defraud" language among various statutes and also by Congress's history of passing new, broader legislation in response to Supreme Court rulings which limited the scope of various fraud statutes. Lastly, the Government notes the similarity in the language between the bankruptcy fraud statute and the various other fraud statutes places these statutes *in pari materia* and demands that they be similarly construed.

■ With particular reference to our discussion of the *post hoc* nature of Lee's bankruptcy filing, the Government points out that under mail fraud jurisprudence, letters mailed after the scheme to defraud was completed, but which were intended to "lull" the victims into a sense of security and to delay their ultimate complaint, are considered to be in furtherance of the scheme.[7] The Government also mentions

cussing motions for reconsideration, particularly not from the Government, our Local Rule of Criminal Procedure 1.2 adopts for use in criminal cases Local Rule of Civil Procedure 7.1(g), which states that "[m]otions for reconsideration or reargument shall be served and filed within ten (10) days after the entry of the judgment, order, or decree concerned." Absent guidance under the criminal rules, we look to the jurisprudence under Fed.R.Civ.P. 59(e) for guidance in considering this motion, *see Rankin v. Heckler*, 761 F.2d 936, 942 (3d Cir.1985) ("Regardless how it is styled, a motion filed within ten days of entry of judgment questioning the correctness of the judgment may be treated as a motion ... under Rule 59(e)."). The purpose of a motion under Rule 59(e) is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). A motion for reconsideration is not to be used, however, as a means to reargue a case or to ask a court to rethink a decision it has made, *see, e.g., Waye v. First Citizen's Nat. Bank*, 846 F.Supp. 310, 314 (M.D.Pa.1994). As discussed below, the Government here raises additional legal arguments in support of the position advanced previously, raising the question of whether their motion meets the threshold requirements for a Rule 59(e) motion. Given the novelty of the interpretation of 18 U.S.C. § 157, however, we will not further consider this concern and will instead pass on to discuss the merits of the Government's new arguments.

**5.** The Government refers to the wire fraud statute, 18 U.S.C. § 1343, *see United States v. Giovengo*, 637 F.2d 941, 943–44 (3d Cir.1980) (finding the wire fraud statute to be *in pari materia* with mail fraud and consequently giving wire fraud broad construction), the bank fraud statute, 18 U.S.C. § 1344, *see United States v. Bonallo*, 858 F.2d 1427, 1432–33 (9th Cir.1988) (noting that the Senate Report stated that the bank fraud statute is modeled after the mail fraud statute, and that the House Judiciary Committee, in considering the bank fraud statute, endorsed the broad reading given to mail fraud), and the major fraud against the United States statute, 18 U.S.C. § 1031, *see* S.Rep. No. 100–503 at 11 ("The phrase 'scheme or artifice' should be interpreted [in 18 U.S.C. § 1031] in the same manner as that phrase is interpreted under the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.").

**6.** The Government notes, for example, that mail fraud jurisprudence has held that omissions may constitute the "scheme or artifice to defraud". *See United States v. O'Malley*, 707 F.2d 1240, 1247 (11th Cir.1983) (holding defendant to be chargeable under the mail fraud statute even though he did not actively misrepresent any fact).

**7.** This includes situations where the mere failure to complete the mailing would have unraveled the scheme.

that under bank fraud jurisprudence, an act that post-dates the defendant's receipt of the money may still be in violation of the statute, and the Government reiterates its argument that Lee's failure to disclose in the bankruptcy filing the additional moneys he had received served to criminally "conceal" the fraud.[8]

Lee counters these arguments by first observing that because the bankruptcy fraud statute is but one of a group of statutes criminalizing various behaviors related to bankruptcy, *see* 18 U.S.C. §§ 151–157, it should be given a narrow construction. Lee contrasts this with the mail fraud statute which, he avers, stands alone and thus warrants broader construction. Lee further argues that the Superseding Indictment does not allege a sufficiently close relationship between the filing and the alleged scheme, irrespective of whether the filing itself was innocent and whether there was a scheme to defraud.[9] He also contends that his alleged failure to disclose, in the bankruptcy filing, the consulting fees paid to his then-fiancee could not amount to criminally "concealing" anything.

While the Government's *esprit de l'escalier* is well-articulated, after careful reflection we do not find that the motion sets forth any reason for us to reverse ourselves.

■ As we discussed in our earlier Memorandum, in order to agree with the Government and to find that Lee's alleged behavior falls under 18 U.S.C. § 157(2), we either would have to apply in this case the broad construction given, *e.g.*, to the mail fraud statute or, alternatively, would have to find that Lee's non-disclosure in the bankruptcy filing puts him within the statute's ambit. Similar though the language of the bankruptcy fraud statute is to that of the various other fraud statutes, we cannot, particularly as a matter of what appears to be first impression, import wholesale into the bankruptcy fraud statute the thick judicial gloss that has been applied over the years to these other statutes.

As the Government concedes, there is nothing in the legislative history of the bankruptcy fraud statute that even hints that it is to be construed as broadly as the mail fraud statute. The Government argues that this absence is immaterial since, as discussed above, other fraud statutes are construed as broadly as is the mail fraud statute. One might argue to the contrary that, given that some other fraud statutes' legislative histories *do* mention the mail fraud statute—*see* note 5, *supra*—the absence of such reference in the bankruptcy fraud statute's legislative history could just as easily mean that Congress did *not* intend such an interpretation.[10]

■ As outlined in our January 20 decision, our due process jurisprudence compels us to interpret ambiguous statutory language against the Government and in favor of the defendant. The Government maintains essentially that this jurisprudence is irrelevant because the language of

---

8. The Government also avers that for purposes of interpreting the breadth of application of the bankruptcy fraud statute, it is irrelevant that Lee's conduct may be covered by other criminal statutes or by civil remedies. While we agree that the existence of other penalties does not foreclose criminal liability for Lee under § 157, this is still something properly considered in construing the statute. Indeed, the Government pointed out at the second oral argument that § 157(2) may well have been intended by Congress as a net to catch facially truthful filings that were in furtherance of a fraud precisely because such truthful filings were not captured by other provisions of the Code. This argument,

naturally, seeks to construe § 157 on the basis of what is and is not criminalized elsewhere.

9. Lee argues that the Superseding Indictment does not sufficiently specify the character of the alleged scheme, even assuming that the broad definition of "scheme or artifice to defraud" from the mail fraud jurisprudence applies to bankruptcy fraud.

10. Such realities demonstrate why it is not so hard to find friendly "heads" in the legislative history crowd that Justice Scalia mentions in *Conroy*, cited in note 14 of our Jan. 20 Memorandum, and thus why legislative history constitutes such an imponderable.

the bankruptcy fraud statute is not ambiguous with respect to Lee's behavior because of the broad construction the courts have adopted for similar language in other statutes. The Government argues that Lee was on warning that he could be charged with bankruptcy fraud because the interpretation given to similar "scheme or artifice to defraud" statutes would have given him notice that his behavior fell under the prohibition of 18 U.S.C. § 157(2).[11]

It would seem to us that the Government's argument puts the cart before the horse—that construction should follow the statute and not vice versa. And in this regard it is important to recall that we are not here engaged in simply any exercise of statutory interpretation. Because this is a criminal case, our interpretation and construction of § 157 are constrained by the due process safeguards owed to Robert Lee. As we discussed in our January 20 Memorandum, the right to due process gives rise to a "fair warning" requirement for criminal statutes: that the defendant have "fair warning ... in language that the common world will understand, of what the law intends to do if a certain line is passed. To make this warning fair, so far as possible the line should be clear." *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 1224, 137 L.Ed.2d 432 (1997) (quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931)). One component of this need for fair warning is the canon of strict construction of criminal statutes, otherwise known as the rule of lenity, which directs us to resolve ambiguity in a criminal statute so as to cover only conduct clearly covered[12], *see Lanier*, 117 S.Ct. at 1225 (citing *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985)). Another component is the principle that "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 117 S.Ct. at 1225 (citing, *e.g., Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977)).

The Government reasserts its argument that Lee's failure to disclose the additional payments in his bankruptcy filing constitutes "concealment" under 18 U.S.C. § 157.[13] At the outset, it remains difficult, even after two motions and two oral arguments on this point, to get one's hands around exactly what the Government says is criminal here. As noted in our January 20 Memorandum, it is not disputed that "there was a lease and that Lee in fact received payments" in accordance with it. Jan. 20 Mem. at 7. We learned at the second oral argument on January 24 that Ali paid the commission to the fiancee (at last identified as Donna Pointer) out of Ali's twenty percent share of the Medicare payments; the eighty percent share of the debtor, Ostomy, was not in the slightest diminished. Ms. Pointer, who was not married to Lee at the time of the payments, should not be presumed to be Lee's marionette, and to the extent she won handsome payments from Ali this is, on its face, merely evidence of capitalism at work and not crime. At all events, Ms. Pointer was not an officer of Ostomy and owed no direct duty to any Ostomy creditor.

Conceding all these realities, the Government nevertheless contends that Lee is a criminal because he did not disclose that Ms. Pointer received these earlier pay-

---

11. The Government argues that "scheme or artifice to defraud" has now become a "term of art" that is understood to imply broad interpretation whenever Congress sees fit to include it in a statute. As discussed in the text, we do not agree that our interpretation should be guided by this reasoning.

12. From a practical standpoint, this means that if someone familiar with the law (as criminal defendants are presumed to be) would in good faith be unsure of whether certain conduct falls under the statute, it doesn't.

13. At the second oral argument, the Government seemed to retreat from its earlier contention that the filing "executed" the fraud. *See supra* note 1 and Jan. 20 Mem. at 7–9.

ments from Ali, even though the Ostomy Estate received every dollar called for in the lease that was ultimately filed several months after Ms. Pointer received her money. The Government locates this affirmative duty of disclosure, in the nature of SEC Rule 10b–5,[14] in the breadth of mail and wire fraud jurisprudence. The Government contends that it does not offend due process to incorporate such breadth into this statute, because Lee is fairly chargeable with understanding that such jurisprudence would be applied to his conduct through the new statute.

But why limit this incorporation to the jurisprudence under the mail and wire fraud statutes?

The essence of the Government's argument is that the formula "scheme or artifice to defraud" constitute magic words meaning "mail and wire fraud statutes." The Government ignores the fact that those very words also appear in the statutes dealing with:

- "commodity trading advisors, commodity pool operators, and associated persons," 7 U.S.C. § 6o (1)(A);
- "the offer or sale of any securities," 15 U.S.C. § 77q(a)(1);
- "any liquidation proceeding or direct payment procedure" by a broker-dealer, 15 U.S.C. § 78jjj(c)(1)(A);
- interstate land sales, 15 U.S.C. § 1703(a)(2)(A);
- investment advisers, 15 U.S.C. § 80b–6(1);
- civil forfeiture, 18 U.S.C. § 981(a)(1)(E);
- criminal forfeiture, 18 U.S.C. § 982(a)(4);
- "[t]ransportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting," 18 U.S.C. § 2314.

As the Government concedes, unlike the bank fraud statute, cited in note 5, *supra*, Congress in the Bankruptcy Reform Act of

1994 gave no direction at all as to which of these many statutes we should look. There is no principled way we can look only to the mail fraud statute but ignore, say, the jurisprudence under the Commodity Exchange Act that antedates the mail fraud statute by twenty-six years. Indeed, as we pointed out on January 20, the closest statutory cognate to what the Government charges here is § 10b of the Securities Exchange Act (and especially SEC Rule 10b 5 promulgated thereunder) which antedates the mail fraud statute by twelve years.

Because there is no limiting principle to the Government's magic language incorporation argument, the Government's approach would present any district judge with insuperable trial management problems in prosecutions under § 157. At the first utterance of a relevancy objection to a question or proffered document, to what body of law under what cognate statute should judges look for guidance? When it comes time to charge the jury, to what body of appellate cases should judges look for the elements of the offense?

Analysis of the 1994 legislation as a whole also belies the Government's inclusive and expansive reading. 18 U.S.C. § 157 was added to the United States Code in 1994, as part of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106. This was substantial legislation [15] addressing a wide variety of bankruptcy issues. Of interest to us is Section 312, which contains amendments and additions to the crimes associated with bankruptcy. These crimes are codified in Chapter 9 of Title 18 of the United States Code, and comprise §§ 151–157. The Bankruptcy Reform Act of 1994 not only added §§ 156 ("Knowing disregard of bankruptcy law or rule") and 157 ("Bankruptcy fraud"), but made amendments as to either form or content of §§ 152 ("Concealment of assets; false oaths and claims; bribery"), 153 ("Embezzlement against estate"), and 154 ("Adverse interest and conduct of officers").[16]

---

**14.** Cited and quoted in note 20 of our Jan. 20 Memorandum.

**15.** Pub.L. No. 103–394 takes up 45 pages in the Statutes at Large.

**16.** The only provisions of Title 18, Chapter 9 not affected by this legislation were §§ 151

A broad reading of § 157(2), such as the Government seeks, would tend to render these other sections of Chapter 9 into surplusage. For example, if we criminalize the filing of a truthful paper in bankruptcy court because it fails to reveal wrongdoing that the filer earlier engaged in relating to the estate, we probably no longer have much need of § 153. This section makes it criminal for a "trustee, custodian, marshal, attorney, or other officer of the court" to "embezzle[ ], spend[ ], or transfer[ ]" any property in the estate in a fraudulent manner. Since these individuals are the ones who will be responsible for filings, and, under the Government's broad reading, any filing linked in any way to the fraud, even by omission [17], will trigger § 157, there plainly is no need for § 153's specificity. A properly-construed § 157 does not swallow up these specific provisions, and there is no evidence that Congress amended them, or added §§ 156 and 157, because they had slipped into desuetude. There is therefore nothing in the 1994 Bankruptcy Reform Act that would lead us to conclude that Congress imported the whole of mail and wire fraud jurisprudence when it adopted this comprehensive Act.

The statutory scheme as a whole thus fortifies our reading of this 1994 law under the canon of strict construction, and our rejection of the Government's expansive magic language incorporation approach. Absent clearer direction from Congress, we shall not import mail and wire fraud jurisprudence to criminalize Lee's *post hoc* nondisclosure.

### *ORDER*

AND NOW, this 25th day of January, 2000, upon consideration of the Government's motion for reconsideration, defendant's response, .and after oral argument on January 24, 2000, and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the Government's motion is DENIED.

---

("Definition") and 155 ("[fraud relating to] Fee arrangements in cases under title 11 and receiverships").

**17.** Moreover, if we were to allow filings which fail to disclose an ongoing fraud as a triggering mechanism under § 157, we would run into the problem of the limiting principle.

As Lee pointed out at the second oral argument, if his failure to disclose the additional payments under the lease in his filing of the lease statement triggered the statute, why not a failure to disclose such information in *any* successive filing following the alleged fraud, since his fiduciary duty to disclose would remain in place indefinitely.