UNITED STATES of America,
Plaintiff,

v.

Albert Lamont HECTOR, Defendant.

No. CR 04–00860 DDP.

United States District Court,
C.D. California.

May 2, 2005.

Mark Aveis, Rosalind Wang, AUSA—Office of U.S. Attorney, Los Angeles, CA, for Plaintiff.

Davina Chen, Federal Public Defender, Los Angeles, CA, for Defendant.

## ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION

PREGERSON, District Judge.

This matter is before the Court on the government's motion for reconsideration of the order granting the defendant's second motion for reconsideration. After reviewing the papers submitted by the parties and hearing oral argument, the Court denies the government's motion and adopts the following order.

## I.  Background

On July 9, 2004, Albert Lamont Hector was charged with possession with intent to distribute cocaine base (21 U.S.C. § 846), possession of a firearm in furtherance of drug trafficking (18 U.S.C. § 924(c)), and being a felon in possession of a firearm and ammunition (18 U.S.C. § 922(g)(1)).

On September 27, 2004, the defendant filed a motion to suppress the evidence obtained on June 2, 2004, when agents from the Bureau of Alcohol, Tobacco and Firearms and officers from the Los Angeles Police Department arrested the defendant and searched his apartment. During the search, the defendant was presented with a "Search Warrant Notice of Service" ("Notice of Service"). The Notice of Service did not indicate which items the officers and agents were authorized to seize, or state the address of the premises to be searched.[1] The government acknowledged during prior oral argument on the defendant's second motion for reconsideration that the "Notice of Service" is not a warrant. After the defendant was booked, he apparently received a property receipt indicating the items seized by the officers. The government conceded during prior oral argument that at no time before, during, or immediately after the search did the officers serve a search warrant on the defendant. It appears that the defendant was first provided with the search warrant as part of the government's discovery obligations.

In his motion to suppress evidence, the defendant argued that the Notice of Ser-

---

1. The Notice of Service stated:
   To whom it may concern:
   1. These premises have been searched by the peace officers of the Los Angeles Police Department pursuant to a search warrant issued on 5/28/04 by the Honorable Judge Jacob Adajian, Judge of the Superior Court, Los Angeles Judicial District.

2. The search was conducted on 6/2/04. A list of the property seized pursuant to the search warrant is provided on the attached Los Angeles Police Department receipt for property taken into custody.
   3. If you wish further information, you may contact: Officer Fletcher at 213–473–4804.

vice was inadequate under Federal Rule of Criminal Procedure 41(f) ("Rule 41") and the Fourth Amendment. The argument regarding Rule 41 was premised on the contention that the investigation had been "federal in character." On October 18, 2004, after determining that the investigation had not been federal in character and that Rule 41 did not apply, the Court denied the defendant's motion to suppress. The Court granted the defendant leave to submit supplemental briefing, which was filed with the Court on October 22, 2004.

On November 1, 2004, the defendant filed a motion for reconsideration of the order denying the motion to suppress evidence. The Court denied this motion on December 1, 2004.

On December 21, 2004, a jury convicted the defendant on all three counts of the indictment.[2]

On December 27, 2004, the defendant filed a second motion for reconsideration of the order denying the motion to suppress evidence. In his reply brief to that motion, the defendant cited the recent ruling in *United States v. Martinez–Garcia*, 397 F.3d 1205 (9th Cir.2005), a decision that postdated the defendant's convictions. In *Martinez–Garcia*, the Ninth Circuit stated that the failure of state officers to serve a warrant at any time before, during, or immediately after a search of a home may be presumptively unreasonable. *Id.* at 1212 n. 3. This was the first time that the Ninth Circuit had clearly applied the notice requirement of the Fourth Amendment's Warrant Clause to state officers. The panel did not set an absolute notice requirement but rather balanced the privacy concerns of the public and the need to give notice with the sometimes competing need for flexibility that permits the police to perform their public safety duties effec-

tively. *Id.* at 1211. In the absence of any such safety and practicality concerns, the Ninth Circuit indicated that failure to serve a warrant is "presumptively unreasonable." *Id.* at 1212 n. 3.

In an order filed on March 23, 2005, this Court applied *Martinez–Garcia* to the search at issue and found that there had been no showing that it was impracticable or imprudent for the officers to serve the warrant on the defendant during or immediately after the search. The Court held that the failure of the officers to serve the search warrant was unreasonable and violated the Fourth Amendment. It found that the evidence obtained during the June 2, 2004 search of the defendant's apartment should have been suppressed.

The government now brings this motion for reconsideration of the March 23, 2005 order. In its motion, the government makes three arguments. First, it argues that the search was reasonable under the totality of the circumstances despite the failure of the officers to present the defendant with the warrant. Second, the government argues that the evidence should not be suppressed because the officers, in not presenting the warrant, acted pursuant to a good faith reliance on the guidelines contained in the County of Los Angeles's Search Warrant Manual and prior state court rulings. Finally, the government for the first time presents evidence that, at the time of the search, the defendant was on probation and subject to warrantless searches of his person and property.

## II. Discussion

### A. *Motion for Reconsideration*

While the Federal Rules of Criminal Procedure do not contain a provision spe-

---

**2.** The Court subsequently granted the defendant's motion for acquittal on Count II of the indictment, which charged the defendant with possession of a firearm in furtherance of drug trafficking, a violation of 18 U.S.C. § 924(c).

cifically allowing motions for reconsideration, numerous circuit courts have held that motions for reconsideration may be filed in criminal cases. *See United States v. Martin,* 226 F.3d 1042, 1047 n. 7 (9th Cir.2000) (post-judgment motion for reconsideration may be filed in a criminal case and governed by Fed.R.Civ.P. 59(e)); *United States v. Fiorelli,* 337 F.3d 282, 286 (3d Cir.2003) (motion for reconsideration allowed in criminal case and governed by Fed.R.Civ.P. 59(e) or Fed.R.Civ.P. 60(b)); *United States v. Clark,* 984 F.2d 31, 33–34 (2d Cir.1993) (motion for reconsideration filed in criminal case within 10 days of subject order is treated under Fed. R.Civ.P. 59(e)).

■ The purpose of a motion under Rule 59(e) is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). *See also 389 Orange Street Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999) (relief under Rule 59(e) "should not be granted ... unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law"). A motion for reconsideration is not to be used as a means to reargue a case or to ask a court to rethink a decision it has made. It is not a substitute for an appeal. *See, e.g., Waye v. First Citizen's Nat'l. Bank,* 846 F.Supp. 310, 314 (M.D.Pa.1994). These civil procedure precepts also govern a motion for reconsideration made in a criminal case. *United States v. Lee,* 82 F.Supp.2d 389, 390–91 n. 4 (E.D.Pa.2000); *United States v. Palm Beach Cruises, S.A.,* 204 B.R. 634, 639 n. 1 (S.D.Fla.1996).

B.  *Reasonableness of the Search Absent Service of the Warrant .*

The government first argues that the June 2, 2004 search of the defendant's residence was reasonable under the totality of circumstances. This argument was already addressed in the Court's previous order. However, because the notice requirement issue was clearly raised for the first time in the defendant's reply to that motion, the Court revisits this issue here to address the government's argument.

■ The government argues that "as a practical matter, defendant received notice that fulfilled the purposes of the Fourth Amendment," and that this rendered the execution of the search reasonable. (Govt's Mot. at 8.) In support of this position, the government asserts that the officers explained to the defendant that they were conducting the search pursuant to a valid search warrant, presented him with the Notice of Service, and informed him that they were looking for evidence of drug trafficking. The government's position appears to be that so long as the executing officers are in possession of a valid warrant and they give the suspect verbal notice of this fact and the warrant's limitations, then the government need not serve the defendant with the warrant even in the absence of practicality or safety concerns. The Ninth Circuit expressly rejected this position in *Ramirez v. Butte– Silver Bow County,* 298 F.3d 1022 (9th Cir.2002). In that case, the court held that an officer's verbal description of the items sought pursuant to the warrant failed to cure a flaw in the warrant. *Id.* at 1026–27. The panel cited *United States v. Gantt* for the proposition that "[c]itizens deserve the opportunity to calmly argue that agents are overstepping their authority or even targeting the wrong residence." 194 F.3d 987, 991 (9th Cir.1999). This type of exchange "is impossible if citizens must rely on officers' verbal representations of the scope of their authority. To stand a real chance of policing the officers' conduct, individuals must be able to read and point to the language of a proper warrant." *Ramirez,* 298 F.3d at 1027.

The defendant never received the warrant before, during, or immediately after the search. Absent service of the warrant, he had no adequate notice of the legal authority that authorized the search. He had no adequate notice of the subject residence and the items searched for. It appears that the defendant was first provided with the warrant as part of the government's discovery obligations, long after the completion of the search. Although the government had the authority to search the defendant's home pursuant to a valid search warrant, it was still required to comply with the notice requirement of the Fourth Amendment. *Martinez–Garcia,* 397 F.3d 1205, 1210–11. "It is the government's duty to serve the search warrant on the suspect, and the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized." *United States v. McGrew,* 122 F.3d 847, 850 (9th Cir.1997).

■ The Warrant Clause serves two important purposes. First, "[i]t requires that any determination of probable cause be reviewed by a neutral and detached member of the judiciary before the warrant issues." *Id.* It is undisputed that the warrant obtained by officers authorizing the search of the defendant's residence was valid in this respect. But the Supreme Court has long held that the purpose of the warrant requirement is not merely the prevention of general searches. *Groh v. Ramirez,* 540 U.S. 551, 561, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). A warrant also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (*abrogated on other grounds, California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)); *see also Groh,* 540 U.S. at 561–62, 124 S.Ct. 1284. Notice of the legal authority authorizing the search and the limits of the executing officer's powers is part and parcel of the warrant requirement. "[A] major function of the warrant is to provide the property owner with sufficient information to reassure him of the entry's legality." *Michigan v. Tyler,* 436 U.S. 499, 508, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). As the Ninth Circuit explained in *McGrew,* officers are required to include affidavits with warrants "not only in order to limit officers' discretion in conducting the search, but also in order to *inform the person subject to the search what items the officers executing the warrant can seize.*'" 122 F.3d at 850 (*quoting United States v. Hayes,* 794 F.2d 1348, 1355 (9th Cir.1986)) (emphasis in *McGrew*). It is this purpose that was not fulfilled by the officers' failure to serve the warrant on the defendant.

### C. *Officers' Good Faith Reliance on Prior Law*

Next, the Government argues that the evidence should not be suppressed because the officers, in not presenting the warrant, acted pursuant to a good faith reliance on the guidelines contained in the County of Los Angeles's Search Warrant Manual and prior state court rulings.[3] Relying on

---

**3.** The pertinent portion of the Search Warrant Manual reads:

> After entry is made, the officer should show the original search warrant to the occupant and give him a copy of the warrant. However, there is no requirement that the search warrant be exhibited to the occupant or that a copy of the warrant be given to the occupant. (*People v. Calabrese,* 101 Cal.

App.4th 79, 83–85, 123 Cal.Rptr.2d 570 (2002); *Nunes v. Superior Court,* 100 Cal. App.3d 915, 936–937, 161 Cal.Rptr. 351 (1980).) There is also no requirement that the search warrant be present at the location to be searched. *People v. Rodrigues–Fernandez,* 235 Cal.App.3d 543, 553, 286 Cal.Rptr. 700 (1991).

*United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the government claims that suppression of the evidence will not serve the primary purpose underlying the exclusionary rule: deterrence of police misconduct. It reasons that deterrence of police misconduct will not be served because "it was objectively reasonable for the officers to rely on the District Attorney's search warrant manual, which in turn relied on California case law holding that defendants did not have a right to have search warrants served on them." (Govt's Mot. at 10.)

■ The exclusionary rule is a judicially-designed remedy aimed at discouraging unconstitutional (or possibly otherwise illegal) police misconduct. *See Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *United States v. Williams,* 622 F.2d 830, 841–42 (5th Cir.1980) (en banc). It functions to suppress evidence obtained directly or indirectly through illegal police activity. *Wong Sun v. United States,* 371 U.S. 471, 485–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The good faith reliance exception to the exclusionary rule provides that "evidence is admissible even if it is obtained as a result of a warrant that is wanting in probable cause or is technically defective so long as the authorities have relied in objective good faith on a facially valid warrant." *Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

■ The *Leon* good faith reliance exception is inapplicable here because the parties do not contest the validity of the warrant. *See United States v. Michaelian,* 803 F.2d 1042, 1047 (9th Cir.1986) ("The good-faith exception is applied when a

magistrate erroneously issues a warrant but the officers involved are not expected to recognize the mistake."). Here, the officers did not execute a search pursuant to warrant lacking sufficient probable cause. Rather, they failed to serve a valid warrant on the defendant at any time before, during, or immediately after the search. There is no authority that supports the proposition that an officer is relieved from following a constitutionally mandated rule merely because he had a good faith belief that his conduct was constitutional.

■ The Government argues that the contested evidence should not be suppressed because "the officers were acting in good faith by relying on a District Attorney's search warrant manual that expressly states that California police officers do not have to serve a warrant." (Mot. at 9.) The fact that the officers were not, and could not have been, aware of the notice requirement is not sufficient to render the search reasonable. As discussed above, the Ninth Circuit resolved the issue of whether the notice requirement applies to the execution of state warrants in *Martinez–Garcia.* There, the court stated that "it may be presumptively unreasonable if officers fail entirely to serve a sufficient warrant at any time before, during or immediately after a search of a home." *Id.* at 1212 n. 3 (citing *United States v. Grubbs,* 377 F.3d 1072, 1079 n. 9 (9th Cir.2004) (holding that officers violated the Fourth Amendment when they did not serve a sufficient warrant at any point "before, during or after the search" and declining to "decide whether the warrant and curative material must be shown to the persons whose property is being searched *prior* to the officers' entry into the home")(emphasis in original); *United States v. McGrew,* 122 F.3d 847, 849–50 (9th Cir.1997) (holding that officers violat-

(County of Los Angeles, *Search Warrant Manual* (2003); Ex. B in Mot. at 23.)

ed the Fourth Amendment when they did not serve the suspect with a warrant during the search of her home or at any time thereafter)).

Moreover, in applying the *Martinez–Garcia* decision, this Court is obligated to follow the retroactivity principle set out by the Supreme Court in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In *Griffith*, the Supreme Court resolved the debate about the effect of judicial decisions establishing constitutional rights and obligations. It held that

> failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.... After we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.

*Id.* at 322–23, 107 S.Ct. 708.

The Supreme Court stated that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328, 107 S.Ct. 708. The Supreme Court thus held that the obligation to retroactively apply constitutional decisions to all pending cases was critical to enforce fidelity to precedent and prevent judicial decision-making from acquiring a legislative character. *See Desist v. United States,* 394 U.S. 244, 256–69, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting); *Mackey v. United States,* 401 U.S. 667, 675–702, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part); *see also* Fallon, Meltzer, and Shapiro, *Hart and Wechsler's The Federal Courts and The Federal System,* 73–75 (5th Ed.2003) (discussing the evolution of the Supreme Court's retroactivity approach).

In light of *Griffith,* it is immaterial whether the officers knew that the lack of service rendered the search unreasonable. The principle announced in *Martinez–Garcia,* that officers executing a search of a residence must serve a valid warrant on the occupants as soon as it is both practical and prudent to do so, applies to all pending cases, including the instant case.

### D. *Effect of the Defendant's Probation Status*

■ Finally, the government argues that the officers' failure to serve the warrant did not violate the defendant's Fourth Amendment right to be free from unreasonable search and seizure because the defendant was subject to warrantless searches as part of the conditions of his probation. In support, the government presents evidence that, at the time of the search, the defendant was serving a three-year probationary sentence and that he had agreed to "submit person and property to search or seizure at any time of the day or night by any law enforcement officer or by probation officer with or without a warrant." (Ex. C to Govt's Mot. at 36.)

It is true that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled.' " *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (*quoting Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). For example, the Supreme Court has held that the search of a probationer's house requires no more than a reasonable suspicion that criminal conduct is occurring, a standard less than probable cause. *United States v. Knights,* 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). In *Knights,* the Supreme Court also held that when an officer has a reasonable suspicion that a proba-

tioner subject to a search condition is engaged in criminal activity, a warrant is not required to search the probationer's residence because such a person has a diminished expectation of privacy. *Id.* Despite this, probationers still enjoy some amount of Fourth Amendment protection. *See, e.g., Knights,* 534 U.S. at 119, 122 S.Ct. 587 (probation significantly diminishes but does not extinguish individual's reasonable expectation of privacy); *Moreno v. Baca,* 400 F.3d 1152, 1157–58 (9th Cir.2005) (parolee's expectation of privacy is diminished but not eliminated); *Latta v. Fitzharris,* 521 F.2d 246, 248–49 (9th Cir.1975) (en banc) (parole search may be held illegal and the evidence obtained therefrom suppressed unless it meets the "reasonableness" standard under the Fourth Amendment).

It is clear from *Knights* that had the officers in this case known that the defendant was on probation and subject to the search condition, and had the officers had a reasonable suspicion that he was engaged in criminal activity, they would have possessed the authority to conduct a search of his residence without a warrant. This is not what occurred. It is undisputed that the officers were unaware of the defendant's probationary status. In fact, the government never raised the issue of the defendant's probation status in response to the three rounds of motions dealing with the warrant issue.

The government defends the officers' failure to serve the warrant by arguing that the defendant's lessened Fourth Amendment protection rendered their unconstitutional conduct harmless. It contends that, because the defendant acquiesced to be subject to warrantless search and seizure, he had a significantly diminished expectation of privacy. However, the Ninth Circuit has rejected similar post-hoc reasoning in *Moreno,* 400 F.3d at 1164. The court in *Moreno* faced a similar

situation in which Los Angeles County deputy sheriffs stopped and searched the plaintiff while he was walking on a public street. The officers made the plaintiff empty his pockets and took him into custody. The plaintiff was subsequently arrested and charged with possession of cocaine. Following an acquittal, the plaintiff sued the officers under 42 U.S.C. § 1983 based on an alleged violation of his Fourth Amendment right to be free from unreasonable search and seizure. He argued that the officers did not have sufficient cause to detain him, even though he had told them that he was a parolee. The officers responded that, despite the alleged lack of reasonable suspicion, the stop was not unreasonable because, although unknown to them at the time, they later learned that the plaintiff had an outstanding bench warrant. In affirming the district court's denial of summary judgment for the officers, the Ninth Circuit confronted the issue this Court now faces, namely "the question of whether a search or seizure can be considered 'reasonable' if the fact that rendered the search 'reasonable' ... was unknown to the officer at the time of the intrusion. We hold that it cannot." 400 F.3d at 1164 (footnote omitted).

This conclusion accords with longstanding Supreme Court precedent. "[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *see also Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (probable cause evaluated in light of "facts and circumstances within the officer's knowledge"); *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (same); *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110

S.Ct. 2793, 111 L.Ed.2d 148 (1990) (holding that "factual determinations bearing upon search and seizure" must be judged against an "objective standard" based on "facts available to the officer at the moment"). Similarly, it is well-settled in the Ninth Circuit that the reasonableness of a search must be evaluated in light of the executing officer's knowledge at the time. *See United States v. Luckett,* 484 F.2d 89 (9th Cir.1973) (per curiam) (officer's post-seizure acquisition of knowledge that defendant was subject to outstanding bench warrant did not retroactively cure unreasonableness of seizure); *United States v. DiCesare,* 765 F.2d 890, 899 (9th Cir.1985) (acquisition of probable cause during seizure does not cure unreasonableness of seizure), *amended by* 777 F.2d 543 (9th Cir.1985).

An instructive discussion on this issue is found in *People v. Sanders,* 31 Cal.4th 318, 2 Cal.Rptr.3d 630, 73 P.3d 496 (2003). There, the California Supreme Court held that the reasonableness of a search under the Fourth Amendment must be evaluated in light of the officers' knowledge at the time of the search. Responding to a domestic disturbance call, the police officers in *Sanders* entered the defendants' apartment and handcuffed its two residents. They then undertook a search that yielded cocaine. Following the search, the officers called the police department and learned that one of the defendants was on parole and subject to search conditions.

In addressing whether the search was lawful because, unknown to the officers when the search commenced, one of the defendants was on parole, the court reviewed both federal and California authorities. The California Supreme Court had previously held that the reasonableness of a search and seizure must be judged in light of the facts known to the officers at the time the search was executed. *See, e,g, In re Martinez,* 1 Cal.3d 641, 83 Cal.

Rptr. 382, 463 P.2d 734 (1970); *People v. Robles,* 23 Cal.4th 789, 97 Cal.Rptr.2d 914, 3 P.3d 311 (2000); *but see In re Tyrell J.,* 8 Cal.4th 727A, 8 Cal.4th 68, 32 Cal. Rptr.2d 33, 876 P.2d 519 (1994). In *Sanders,* Justice Moreno, writing for the majority, disavowed the one exception in this line of cases, *Tyrell J.,* which he stated received a chilly reception from numerous commentators who believed that the decision misapplied United States Supreme Court precedent and eroded Fourth Amendment protections. After reviewing California cases and numerous United States Supreme Court and Ninth Circuit cases, Justice Moreno concluded that "police cannot justify an otherwise unlawful search of a residence because, unbeknownst to the police, a resident of the dwelling was on parole and subject to a search condition." *Id.* at 332, 2 Cal. Rptr.3d 630, 73 P.3d 496.

Justice Moreno noted that this holding did not contradict the United States Supreme Court's ruling in *Knights* that a probationer or a parolee is subject to a warrantless search by an officer having reasonable suspicion. In *Knights,* the Supreme Court based the lessened search standard on the state's special interest in monitoring the probationer to insure that he does not engage in criminal conduct. 534 U.S. at 121, 122 S.Ct. 587; *see also Moreno,* 400 F.3d at 1162. When the officer is unaware that the suspect is subject to the search condition, however, "such a search cannot be justified as a parole search, because the officer is not acting pursuant to the conditions of parole." *Sanders,* 31 Cal.4th at 333, 2 Cal.Rptr.3d 630, 73 P.3d 496.

The holding in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) does not alter this result. There, the Supreme Court held that the illegitimate subjective motivation of a police

officer will not invalidate an otherwise constitutional seizure that is "objectively justifiable" based on facts known to the officer. *Id.* at 813, 116 S.Ct. 1769. Here, no one claims that the officers acted in bad faith at any point during the search. Rather, the officers simply failed to serve the warrant on the defendant, and this failure rendered the search unreasonable. The fact that the defendant was a probationer subject to a search condition does not make the search "objectively justifiable" precisely because the officers had no knowledge of that fact at the time of the search.

The Fourth Amendment requires that officers know and give notice of the legal basis for their authority to search. Only then can the individual whose property is searched or seized have full knowledge "of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Chadwick*, 433 U.S. at 9, 97 S.Ct. 2476 (*abrogated on other grounds, California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)). This is important "not only in order to limit officers' discretion in conducting the search, but also in order to *'inform the person subject to the search what items the officers executing the warrant can seize.'*" *McGrew*, 122 F.3d 847, 850 (9th Cir.1997) (*quoting United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986)) (emphasis in *McGrew*). If the searched individual is not aware of the basis for the officer's legal authority, he is unable to effectively monitor the officer's activities and draw attention to possible abuses. Absent such notice, for example, a probationer is unable to point out that the officers are at the wrong residence, or that they are otherwise exceeding the scope of their authority. *See Gantt*, 194 F.3d at 991. Accordingly, "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry v.*

*Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (*quoting Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)) (Fortas, J., concurring). The legal authority that permitted the officers to enter the defendant's residence derived from the warrant which they validly obtained but failed to serve. The officers were unaware that the defendant was on probation. They cannot now rely on what they did not know at the time to compensate for their failure to serve the warrant on the defendant. "[A] search or seizure [cannot] be considered 'reasonable' if the fact that rendered the search 'reasonable' ... was unknown to the officer at the time of the intrusion." *Moreno*, 400 F.3d at 1164.

### III. Conclusion

For the foregoing reasons, the Court denies the government's motion for reconsideration.

IT IS SO ORDERED.