Filed 2/9/24  P. v. Bryant CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>SAMUEL XAVIER BRYANT,<br><br>　　　Defendant and Appellant. | F085387<br><br>(Super. Ct. No. BF140718A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Erin R. Doering, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Petitioner Samuel Xavier Bryant petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his convictions for first degree murder and premeditated attempted murder. The superior court denied the petition at the prima facie stage, without an evidentiary hearing, after determining petitioner was the actual killer.

On appeal, petitioner argues the jury instructions allowed the jury to find him guilty of first degree murder and premeditated attempted murder under the natural and probable consequences doctrine. He therefore argues the court erred in determining his petition did not state a prima facie case for resentencing.

We reverse.

## PROCEDURAL BACKGROUND

### I.     Underlying Charges and Convictions

"On July 3, 2012, [petitioner] and Joseph Jamal Hendrix were charged in the murder of Jacob Ramirez and the shooting of Manuel Gomez. Following a jury trial, [petitioner] was convicted of first degree murder (count 1; . . . § 187, subd. (a)), premeditated attempted murder (count 2; §§ 664/187, subd. (a)), two counts of assault with a semiautomatic firearm (counts 3 & 4; § 245, subd. (b)), discharging a firearm at an inhabited dwelling (count 5; § 246), and active participation in a criminal street gang (count 6; § 186.22, subd. (a)). Enhancements under section 12022.53, subdivisions (d) and (e)(1) applied to counts 1 and 2; enhancements under section 12022.7 applied to counts 2, 3, and 4; enhancements under sections 12022.5, subdivision (a) and 186.22, subdivision (b)(1) applied to counts 3 and 4; and an enhancement under section 12022.53, subdivisions (c) and (e)(1) applied to count 5. [Petitioner], a juvenile, was

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 has been renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

sentenced to an aggregate term of 82 years to life in prison, and the trial court imposed additional fines and fees.

"Following that same trial, Hendrix was found guilty of second degree murder (count 1; § 187, subd. (a)), attempted murder (count 2; §§ 664/187, subd. (a)), two counts of assault with a semiautomatic firearm (counts 3 & 4; § 245[,] subd. (b)), discharging a firearm at an inhabited dwelling (count 5; § 246), and active participation in a criminal street gang (count 6; § 186.22, subd. (a)).  Enhancements under section 12022.53, subdivisions (d) and (e)(1) applied to counts 1 and 2; enhancements under sections 12022.7 and 186.22, subdivision (b)(1) applied to counts 2, 3, and 4; an enhancement under [section] 12022.5, subdivision (a) applied to counts 3 and 4; and an enhancement under section 12022.53, subdivisions (c) and (e)(1) applied to count 5.  Hendrix was sentenced to an aggregate term of 72 years to life in prison, and the trial court imposed additional fines and fees." (*People v. Bryant* (Dec. 12, 2014, F066725) [nonpub. opn.], fn. omitted (*Bryant*).)[2]

On appeal, this court affirmed.  (*Bryant*, *supra*, F066725.)

---

[2] We dispense with a statement of facts.  The record on appeal does not include admissible evidence of the underlying facts (see § 1172.6, subd. (d)(3)) and, in any event, the underlying facts are not relevant to our disposition.

We grant in part the People's request for judicial notice and take judicial notice of our opinion in *Bryant*, *supra*, F066725, which was relied on by the superior court and is cited by both parties in their briefing.  (Evid. Code, § 452, subd. (d).)  However, we otherwise deny the request for judicial notice.  We deny the request for judicial notice of the transcripts from the record on appeal on the ground it does not appear these records were before the superior court. (*People v. Sanders* (2003) 31 Cal.4th 318, 323, fn. 1 [declining to take judicial notice of documents that were not before the trial court].)  We note that, in reaching its decision, the superior court considered the verdict form, the jury instructions, and the appellate opinion.  However, the jury verdict is adequately summarized in our appellate opinion.  The jury instructions have been included in the record on appeal as an augmented clerk's transcript.  Thus, judicial notice of these documents from the prior record on appeal is unnecessary to the disposition. (Cf. *People v. Young* (2005) 34 Cal.4th 1149, 1171, fn. 3 [judicial notice cannot be taken of any matter that is irrelevant].)

## II. The Petition for Resentencing

On June 24, 2022, petitioner filed a petition for resentencing pursuant to section 1172.6. Counsel was appointed to represent petitioner.

The People opposed the petition. The People requested the court take judicial notice of this court's opinion in *Bryant*, *supra*, F066725, as well as the "court files, records, and transcripts" in the underlying criminal case. Based thereon, the People argued that the jury's verdict, when viewed in context with the jury instructions, established as a matter of law that petitioner was the actual killer of Ramirez and the person who actually attempted to kill Gomez.

Petitioner filed a reply, arguing the People's response was based on inadmissible hearsay. He asserted he had met his burden to make a prima facie showing of eligibility.

At the prima facie hearing, the court stated it had considered "the readily ascertainable facts taken from the record of conviction, which include the verdict form, the jury instructions, [and] the procedural posture of this case as articulated in the appellate opinion." The court further stated it had not "involved itself in weighing of facts or factual determinations as that would be improper at this stage."

The court then denied the petition as follows:

> "[B]ased on the record of conviction that the [c]ourt has reviewed, the [c]ourt will find that the petitioner has not satisfied a prima facie case or has not demonstrated a prima facie determination or case to set this for an order to show cause. It does appear to the [c]ourt based on a review of the documents previously described, that the defendant is ineligible for a petition of resentencing since he was the actual killer in this case."

This timely appeal followed.

## DISCUSSION

## I. Applicable Law Regarding Section 1172.6

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "to amend the felony murder rule and the natural

and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)  The bill amended the natural and probable consequences doctrine by requiring that a principal act with malice aforethought before he or she may be convicted of murder.  (§ 188, subd. (a)(3); accord, *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)  The bill amended the felony-murder rule by providing that a participant in a qualifying felony is liable for murder only if the victim was a peace officer in the performance of his or her duties, or the defendant was the actual killer, aided and abetted the actual killer in the commission of first degree murder with the intent to kill, or was a major participant in the felony and acted with reckless indifference to human life.  (§ 189, subds. (e), (f); accord, *Strong*, at p. 708.)

Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, [or] attempted murder under the natural and probable consequences doctrine" to seek vacatur of the conviction and resentencing.  (§ 1172.6, subd. (a); accord, *Gentile*, *supra*, 10 Cal.5th at p. 853.)  Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subds. (a)–(c); accord, *Strong*, *supra*, 13 Cal.5th at p. 708.)  Our Supreme Court has recently explained that "a petitioner who alleges that he or she could not currently be convicted of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' [citation] puts at issue all elements of the offense under a valid theory" (*People v. Curiel* (2023) 15 Cal.5th 433, 462 (*Curiel*)), and this allegation is

5.

not refuted "unless the record conclusively establishes every element of the offense" (*id.* at p. 463). In making this determination, the court may rely on the record of conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 970–971.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

"If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Curiel*, *supra*, 15 Cal.5th at p. 450.) If the trial court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder [or attempted murder] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1172.6, subds. (c), (d)(1).) At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) Significantly, "[a] finding that there is substantial evidence to support a conviction for murder[ or] attempted murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*)

## II. The Jury Instructions

Petitioner's jury was instructed as follows with regard to aiding and abetting:

"A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.

"A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.

"Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

Additionally, the jury was instructed in relevant part:

"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1.     The perpetrator committed the crime;

"2.     The defendant knew that the perpetrator intended to commit the crime;

"3.     Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

"AND

"4.     The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

"Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The jury also was instructed on the natural and probable consequences doctrine in relevant part as follows:

"Before you may decide whether the defendant is guilty of Murder[ or] Attempted Murder . . . you must decide whether he is guilty of Simple Assault.

"To prove that the defendant is guilty of Murder[ or] Attempted Murder . . . the People must prove that:

"1. The defendant is guilty of Simple Assault;

"2. During the commission of Simple Assault a coparticipant in that Simple Assault committed the crime of Murder[ or] Attempted Murder . . . ;

"AND

7.

"3.  Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the Murder[ or] Attempted Murder . . . was a natural and probable consequence of the commission of the Simple Assault."

The natural and probable consequences instruction further provided, "A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.  If the Murder[ or] Attempted Murder . . . was committed for a reason independent of the common plan to commit the Simple Assault, then the commission of Murder[ or] Attempted Murder . . . was not a natural and probable consequence of Simple Assault."  The instruction additionally provided, "The People are alleging that the defendant originally intended to aid and abet Simple Assault."

With regard to murder, the jury was instructed on malice aforethought, including express and implied malice.  In this regard, the jury was instructed that, to prove "the defendant" is guilty of murder, the People must prove that "[t]he defendant committed an act that caused the death of another person," and "[w]hen the defendant acted, he had a state of mind called malice aforethough[t]."  The jury was instructed that implied malice required it to find "1. [The defendant] intentionally committed an act;  [¶]  2. The natural and probable consequences of the act were dangerous to human life;  [¶]  3. At the time he acted, he knew his act was dangerous to human life;  [¶]  AND  [¶]  4. He deliberately acted with conscious disregard for human life."

With regard to first degree murder, the jury was instructed in relevant part as follows:

"The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  The defendant acted willfully if he intended to kill.  The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.  The defendant

8.

acted with premeditation if he decided to kill before completing the act that caused death."

To find defendant guilty of attempted murder, the jury was required to find that:

"1. The defendant took at least one direct but ineffective step toward killing another person;

"AND

"2. The defendant intended to kill that person."

With regard to deliberation and premeditation as they pertain to attempted murder, the jury was instructed, in relevant part, as follows:

"If you find the defendant guilty of attempted murder under Count Two, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation.

"The defendant or the co-defendant acted willfully if he intended to kill when he acted. The defendant or the co-defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant or the co-defendant premeditated if he decided to kill before acting.

"The attempted murder was done willfully and with deliberation and premeditation if either the defendant or the co-defendant or both of them acted with that state of mind."

## III. Analysis

Petitioner contends the jury instructions permitted the jury to find him guilty of murder and premeditated attempted murder under the now-invalid natural and probable consequences doctrine. He further contends the verdict does not conclusively establish he acted as the actual shooter, as opposed to an aider and abettor. As such, he contends the record does not establish his ineligibility for resentencing as a matter of law. In light of our Supreme Court's recent decision in *Curiel*, *supra*, 15 Cal.5th 433, we must agree with petitioner that the record does not establish his ineligibility for resentencing as a matter of law.

We begin by acknowledging that the jury necessarily found petitioner acted with intent to kill with regard to both the murder and attempted murder counts by finding that he acted willfully, deliberately, and with premeditation. As stated, the instruction on first degree murder provided:

> "*The defendant* is guilty of first degree murder if the People have proved that *he* acted willfully, deliberately, and with premeditation. The defendant acted willfully if *he* intended to kill. The defendant acted deliberately if *he* carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if *he* decided to kill before completing the act that caused death." (Italics added.)

This instruction required the jury to find petitioner *personally* acted with intent to kill before it could find him guilty of first degree murder.[3] Moreover, the jury found codefendant Hendrix guilty of non-premeditated second degree murder (*Bryant*, *supra*, F066725), further confirming the jury did not impute willfulness, deliberation, and premeditation to petitioner based on Hendrix's mental state. (See §§ 188, subds. (a)(1), (3), (b), 189, subd. (e)(2).)

As previously stated, with regard to premeditated attempted murder, the jury was instructed in relevant part:

> "If you find *the defendant* guilty of attempted murder under Count Two, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation.
>
> "The defendant or the co-defendant acted willfully if he intended to kill when he acted. The defendant or the co-defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant or the co-defendant premeditated if he decided to kill before acting. [¶] *The*

---

[3] The instruction is therefore distinguishable from instructions given in other cases, which left open the possibility the jury based its premeditation finding on the conduct of a codefendant. (See, e.g. *People v. Whitson* (2022) 79 Cal.App.5th 22, 34 [instruction required the jury to find the "would-be slayer" acted with intent to kill].)

10.

*attempted murder was done willfully and with deliberation and premeditation if either the defendant or the co-defendant or both of them acted with that state of mind.*" (Italics added.)

This instruction permitted the jury to find petitioner guilty of premeditated attempted murder if it found that either petitioner or Hendrix acted with intent to kill. However, the jury rejected the premeditation allegation with regard to Hendrix. As such, the jury necessarily found petitioner acted willfully and with intent to kill when he acted.

However, these findings, standing alone are insufficient to rebut petitioner's allegations of resentencing eligibility. Our Supreme Court has clarified that intent to kill is "only one element" of the offense of murder or attempted murder, and "[i]t does not by itself establish any valid theory of liability." (*Curiel*, *supra*, 15 Cal.5th at p. 463.) "A finding of intent to kill does not, standing alone, cover all of the required elements." (*Ibid.*) If only this element of the relevant offense is established by the record, "petitioner could still be correct that he . . . could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Ibid.*)

We may look to the jury's other findings to determine whether they exclude petitioner from resentencing eligibility by establishing the jury found all elements of murder and attempted murder under a valid theory. (*Curiel*, *supra*, 15 Cal.5th at pp. 463–464, 465.) In the instant case, we conclude they do not.

First, we note that the jury instructions on aiding and abetting and the natural and probable consequences doctrine are identical in nearly all relevant respects to those given in *Curiel*.[4] (*Curiel*, *supra*, 15 Cal.5th at pp. 446–447.) *Curiel* found these instructions insufficient to establish either that the jury found that the petitioner intended to aid the actual perpetrator in the commission of murder (rather than a target offense under the

---

[4] The *Curiel* instructions provided that an aider and abettor was " 'equally guilty' " of the crimes (*Curiel*, *supra*, 15 Cal.5th at pp. 445–446), whereas petitioner's instructions provided, "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."

11.

natural and probable consequences doctrine) or that the target offense itself was dangerous to human life. (*Id.* at p. 468.) On these instructions, the high court determined that a jury finding of intent to kill "is insufficient to establish the requisite mens rea for aiding and abetting murder." (*Ibid.*) Thus, pursuant to *Curiel*, the jury's findings in the instant case do not establish his ineligibility for resentencing as a matter of law. (Cf. *id.* at p. 471 [noting that the holding of *Curiel* may not extend to cases involving jury instructions that are "materially different"].)

Nor do the jury's findings establish that the jury found petitioner was the actual killer. As stated, the jury was instructed on both the natural and probable consequences doctrine and principles of aiding and abetting. The natural and probable consequences instruction explained, "The People are alleging that *the defendant* originally intended to aid and abet Simple Assault." (Italics added.) Petitioner and Hendrix were tried together, and the instruction did not specify that "the defendant" referred to therein was Hendrix. Similarly, the aiding and abetting instruction was not limited to codefendant Hendrix. Thus, the instructions permitted the jury to find petitioner guilty of murder or attempted murder under a natural and probable consequences or aiding and abetting theory.

The People argue the jury would not have applied the natural and probable consequences instruction to petitioner because the prosecutor argued to the jury that petitioner was the actual killer and Hendrix was guilty as an aider and abettor under the natural and probable consequences doctrine. However, we have declined to take judicial notice of the transcript of closing argument. Moreover, the jury was not required to apply the instructions in the manner argued by the prosecutor. Thus, while the People argue the verdict is "largely consistent" with the prosecutor's putative argument, and the argument provides the "likely explanation" for the jury's verdict, the argument alone could not *conclusively establish* the jury limited its application of the natural and probable consequences doctrine to Hendrix. Thus, the prosecutor's putative argument could not

12.

establish petitioner's ineligibility for resentencing as a matter of law. (See *People v. Langi* (2022) 73 Cal.App.5th 972, 976.)

The People also argue "there was no basis in the instructions for the jury to find that Hendrix *directly* committed non-premeditated murder and attempted murder but [petitioner] committed premeditated murder and attempted murder based on natural and probable consequences." However, under our Supreme Court's reasoning in *Curiel*, the jury could have determined that petitioner knew that Hendrix intended to commit simple assault and intended to aid Hendrix in that assault, without also finding that petitioner foresaw "the homicidal or life-endangering consequences" of Hendrix's actions in this context. (*Curiel*, *supra*, 15 Cal.5th at p. 470.) The jury could have found that this conduct by petitioner was done willfully, deliberately, and with premeditation, but without a subjective belief that Hendrix's act would or could be life-endangering. "Indeed, a defendant could act with intent to kill but at the same time believe the actual perpetrator could never risk harm to another human being — and be genuinely surprised when the actual perpetrator commits a life-endangering act." (*Ibid.*)

We recognize that such jury findings are highly unlikely, even implausible. However, pursuant to *Curiel*, "the question is not whether it is *likely* a defendant could have felt and acted in such a way, but whether the court's jury instructions foreclose that possibility *as a matter of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage." (*Curiel*, *supra*, 15 Cal.5th at p. 470.) Under instructions similar to those presented here, the high court determined the jury instructions did not foreclose such theories as a matter of law. (*Id.* at p. 471.) Accordingly, pursuant to *Curiel*, the instructions and verdict in the instant case are insufficient to rebut petitioner's allegation that he could not be convicted of murder and attempted murder under current law.

Based on the foregoing, we reverse the court's order denying the petition and remand with directions to issue an order to show cause. (§ 1172.6, subd. (c).)

## **DISPOSITION**

The court's December 7, 2022 order denying the petition is reversed and the matter is remanded with directions to issue an order to show cause and conduct such further proceedings as necessary pursuant to section 1172.6.

DETJEN, J.

WE CONCUR:

LEVY, Acting P. J.

FRANSON, J.

14.